**NATIONAL LABOR RELATIONS BOARD**

v.

**MAC SMITH GARMENT COMPANY, Inc.***
**No. 14946.**

United States Court of Appeals, Fifth Circuit.

Feb. 9, 1955.

Rehearing Denied March 7, 1955.

* This is respondent's second appearance in this court. Its first appearance was in N. L. R. B. v. Mac Smith Garment Co., 5 Cir., 203 F.2d 868, 869.

**470**

Charles M. Paschal, Chief Law Officer, New Orleans, La., David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, George J. Bott, Gen. Counsel, Frederick U. Reel, Robert E. Miller, Attys., N. L. R. B., Washington, D. C., for petitioner.

David Cottrell, Jr., Eaton & Cottrell, Gulfport, Miss., for respondent.

Before HUTCHESON, Chief Judge, BORAH, Circuit Judge, and DAWKINS, District Judge.

HUTCHESON, Chief Judge.

Adopting the findings and conclusions [1] and the recommendations [2] of the examiner and entering its order, reported at 107 N.L.R.B. No. 27, accordingly,

the board filed this proceeding to secure enforcement thereof.

The respondent in its answer, denying that it had committed the unfair labor practices charged, alleged that the findings of examiner and board were contrary to the evidence, were based upon suspicion and upon a partisan and, therefore, unfair consideration of the record, and were completely contrary to the admissible conclusions to be drawn therefrom. These, as respondent states them, are that respondent did not engage in any unfair activity but that, on the contrary, it merely took the protective measures and actions which it had been forced, by the illegal actions of the Ladners and those associated with them in bringing on a slow-down and work stoppage, to take in the prudent protection and conduct of its business.

Briefing and arguing the case upon the issues thus joined, the board is here insisting: that the findings of fact find full support in the record considered as a whole; and that the conclusions of law that the conduct, in which the three Ladners and those who walked out in protest of their discharge were engaged, constituted concerted activity for their mutual aid and protection within the meaning of Sec. 7 of the Act, 29 U.S.C.A. § 157, and the teachings of Gullet Gin Co. v. N. L. R. B., 5 Cir., 179 F.2d 499.

The respondent on its part, citing many decisions of board and courts,[3]

1. These were in substance: that the respondent, in violation of Sec. 8(a) (1) of the Act, 29 U.S.C.A. § 158(a) (1), discharged Hillman, Tillman, and Lovander Ladner for engaging in concerted activity to secure a wage increase; and that the other employees named in the intermediate report walked out in protest against the unlawful discharge of the three Ladners and thereby became unfair labor practice strikers, entitled to reinstatement on their unconditional application.

2. These were that the respondent be ordered: (1) to cease and desist from (a) discharging or refusing to reinstate any of its employees because they engaged in concerted activities for their mutual aid and protection, and (b) in any other manner interfering with, restraining, or

coercing its employees in the exercise of their rights accorded by the Act; and (2) to take the following affirmative action, (a) offer to the three Ladners and the others named immediate and full reinstatement to their former positions and make each of them whole for any loss of pay, and (b) make whole for any loss of pay the employees named in the report who, before the hearing was had and the report filed, had already been reinstated.

3. Elk Lbr. Co. v. N. L. R. B., 91 N.L.R.B. 333, in which the board held that either unlawful objectives or the adoption of improper means of achieving lawful objective may deprive employees of the protection of the act.—In that case there had been a slow-down which the board said was unprotected activity; Phelps Dodge Cooper. Pro. Corp., 101 N.L.R.B.

urges upon us that the record will not fairly support any other conclusion than that the Ladners were not discharged for merely undertaking by lawful means to obtain a wage increase, as those were who were discharged in the Gullet Gin Co. case, supra, but were discharged for their illegal actions in undertaking to force the granting of a wage increase by disrupting work in the plant and bringing about and maintaining a slow-down until their demands were met.

A reading of the testimony, as it is set out in the appendices of respondent and board, discloses that, in broad outlines, the testimony of the witnesses for respondent and board, as to the facts, that there was a sudden demand by the Ladners, as representatives of a group, for a wage increase, a manifested impatience with any delay by the company in meeting the demand, and some disturbance of and deviation from the norm of employer and employee relations, both on Wednesday when the demand was first made and early in the morning of the next day, is in substance the same.

The real difference between examiner and board, on the one hand, and respondent, on the other, in their reading and appraisal of the effect of the testimony, lies in this: that examiner and board affirm, and the respondent denies, that what the employees did did not go beyond the normal limits within which employees might act in presenting or pressing wage demands, while what the employer did went beyond the limit of its rights and, as in the Gullet Gin Co. case, constituted unlawful invasion and deprivation of the rights granted and guaranteed to employees in and by the act.

The board urges upon us that the evidence not only supports, but indeed requires, the finding that whatever may have been the intention of the Ladners and those who supported them to press beyond the limits of permissible nego-tiation for the granting of their demands, and whatever, if respondent had not prematurely and unlawfully discharged the Ladners, might have eventuated, the record leaves in no doubt, that nothing had been done by the Ladners before their discharge which in any manner converted an unjustifiable, into a justifiable, discharge.

The respondent, on its part, insisting: that the testimony of the claimants themselves comes near to proving respondent's defense; that one of general counsel's witnesses admitted the slow-down; that when the record is considered as a whole, the only reasonable inference from it is that, long before the Ladners were discharged, their actions had gone beyond the permissible to become the forbidden; urges upon us that it is the merest sophistry to hold, as examiner and board did, that they had not, before they were fired, already proceeded beyond lawful negotiations to unlawful compulsion.

We do not think so. A consideration of the examiner's findings in the light of the respective contentions and the appendices of board and respondent convinces us that if the Ladners had been able to obtain sufficient support among the employees for such action, they would, if unable to obtain their demands for a raise by negotiations have sought to enforce them by instituting a slow-down or a strike. The same consideration, however, convinces us that at the time of their abrupt discharge early on the morning of Thursday, they had not obtained, and probably would not have been able to obtain, sufficient backing for instituting either course, and, therefore, they had not passed, from permissible and protected efforts to obtain the raise by negotiations, to unpermissible and unprotected actions to obtain it by unlawful compulsions.

103, in which the board, in a full discussion of the vice of a slow-down, held to the same effect; N. L. R. B. v. Indiana Desk Co., 7 Cir., 149 F.2d 987; N. L. R. B. v. Condenser Corp., 3 Cir., 128 F.2d 67; N. L. R. B. v. Montgomery Ward & Co., 8 Cir., 157 F.2d 486; Victor Products Corp. v. N. L. R. B., 93 U.S.App. D.C. 56, 208 F.2d 834.

This being so, it is quite plain: that examiner and board correctly concluded that the discharges of the Ladners constituted unfair labor practices; that the strike which they precipitated was an unfair labor practice strike; and that the order of the board should be enforced.

Order enforced.