425 F.2d 157
 CHAUFFEURS, TEAMSTERS AND HELPERS LOCAL UNION NO. 171, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent, and
Overnite Transportation Company, Inc., Intervenor.
 No. 13720.
 United States Court of Appeals, Fourth Circuit.
 Argued March 4, 1970.
 Decided April 23, 1970.
 
 Hugh J. Beins, Washington, D. C., (Robert M. Baptiste, Washington, D. C., on brief) for petitioner.
 Allison W. Brown, Jr., Atty., N.L.R.B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Madge F. Jefferson, Atty., N.L. R.B., on brief) for respondent.
 J. W. Alexander, Jr., Charlotte, N. C. (Blakeney, Alexander & Machen, Charlotte, N. C., on brief) for intervenor.
 Before HAYNSWORTH, Chief Judge, and BOREMAN and WINTER, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 The union[1] seeks review of an order dismissing a backpay proceeding which was instituted to determine if there had been compliance with the order which we enforced in Overnite Transportation Company, Inc. v. NLRB, 372 F.2d 765 (4 Cir. 1967), cert. den., 389 U.S. 838, 88 S.Ct. 59, 19 L.Ed. 101 (1967). We agree that dismissal of a part of the proceeding was proper, but we vacate the dismissal as to the remainder and remand for further findings.
 
 
 2
 As set forth in our previous opinion, Overnite, on November 19, 1964, purchased and took over the operation of Rutherford Freight Lines (Rutherford). The union was at the time the certified bargaining representative for Rutherford's employees. Simultaneously with the takeover, and without notifying, consulting, or bargaining with the union, Overnite repudiated Rutherford's collective bargaining agreement and instituted its own policies with respect to wages, hours, and other conditions of employment. The board subsequently determined that this unilateral action violated §§ 8(a) (5) and 8(a) (1) of the Act. The board's order directed Overnite to restore the wages, hours, and other conditions of employment which had prevailed before the takeover and to make employees whole for any economic loss which they had suffered as a result of the unfair labor practice. Overnite Transportation Company, Inc., 157 N.L. R.B. 1185 (1966). We enforced the order. Overnite Transportation Co., Inc. v. NLRB, supra.
 
 
 3
 Thereafter the backpay proceeding now before us was instituted under § 102.52 of the board's Rules and Regulations, 29 C.F.R. §§ 102.52-102.54, in order to determine whether Overnite had complied with the remedy required by the board's order. The union seeks review of the board's ruling with regard to the category of employees entitled to backpay and the types of benefits encompassed in the award.[2]
 
 
 4
 * Before the trial examiner both the union and the regional director claimed that the board's original order was applicable not only to Rutherford employees who continued with Overnite but also to new employees hired by Overnite after November 19. The trial examiner rejected this claim. The board reached the same conclusions and dismissed this aspect of the backpay proceedings. Overnite Transportation Co., Inc., 175 N.L. R.B. No. 127 (1969). We agree with this disposition.
 
 
 5
 The board's original decision in the unfair labor practice case and our decision enforcing the board's order were both limited to ex-Rutherford employees. The language of each opinion strongly suggests that the attention of the trial examiner, the board, and this court was directed solely to these men. For example, the trial examiner stipulated that the issue before him was whether Overnite had violated the Act "by changing the employees' wages and conditions of employment immediately upon its succession * * *," 157 N.L.R.B. at 1186. The class to whom this statement is applicable could only have included employees who worked for both Rutherford and Overnite. Similarly, we referred to ex-Rutherford employees in defining the issue which that case raised:
 
 
 6
 "There is presented for our decision this question: May the board lawfully direct Overnite to restore to employees who formerly worked for the selling company [Rutherford] the economic benefits that had been maintained by the seller. * * *"
 
 
 7
 372 F.2d at 767.
 
 
 8
 More significantly, however, the reasoning of both opinions is applicable only to the ex-Rutherford employees. Both the trial examiner, whose opinion was adopted by the board, and this court relied heavily on the Supreme Court's decision in John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), from which each quoted the following passage:
 
 
 9
 "The objectives of national labor policy * * * require that the rightful prerogative of owners independently to rearrange their businesses * * * be balanced by some protection to the employees from a sudden change in the employment relationship."
 
 
 10
 Id. at 549, 84 S.Ct. at 914, quoted in 372 F.2d at 768; 157 N.L.R.B. at 1189-1190. Manifestly, employees hired after Overnite's acquisition of Rutherford's facilities did not experience the sort of "sudden change in employment relationship" to which Wiley referred.
 
 II
 
 11
 The union also claims that in several other respects Overnite has failed to comply with the board's original remedial order. It contends that complete compliance requires that the remedy include all of the benefits specified in its collective bargaining agreement with Rutherford. In particular, the union claims that the seniority, discharge, health and welfare, and pension provisions have not been adequately handled.
 
 
 12
 None of the issues raised by the union was included by the regional director in the Notice of Backpay Hearing — the document which initiates a backpay proceeding. When the union attempted to raise these issues at the hearing, the trial examiner took the position that the scope of the proceeding was limited to the matters specified in the notice. He, therefore, refused to consider the union's contentions and made no findings with respect to them. In a footnote to its decision affirming the trial examiner, the board declined to adopt his rationale but, nevertheless, rejected the union's claims:
 
 
 13
 "Upon consideration of the scope of our order as enforced by the Court as well as the nature of the settlement before the hearing in this present proceeding, we reject the Charging Party's [the union's] contention respecting other matters it sought but was not allowed by the Trial Examiner to litigate. In doing so, however, we do not hold that in a backpay proceeding, a Charging Party is precluded from urging matters not set out by the Regional Director, but properly within the contemplation of a Board remedial order."
 
 
 14
 The Administrative Procedure Act, 5 U.S.C.A. § 557(c) requires that
 
 
 15
 "All decisions * * * shall include a statement of —
 
 
 16
 (A) findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record * * *."
 
 
 17
 In NLRB v. Clement-Blythe Companies, 415 F.2d 78, 81 (4 Cir. 1969), we held that this provision required the board to state its reasons for deciding that an employer had committed an unfair labor practice. Cf. Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 195, 61 S.Ct. 845, 85 L.Ed. 1271 (1941); 2 Davis, Administrative Law, § 16.12 (1958). As we said there, when the board does not state its reasons,
 
 
 18
 "it is difficult to say whether its order is rational or arbitrary * * *. `[C]ourts ought not to have to speculate as to the basis for an administrative agency's conclusion.' Northeast Airlines, Inc. v. CAB, 331 F.2d 579, 586 (1st Cir. 1964). * * * [T]he reasons for the Board's decision * * * [are] essential, for lack of clarity in the administrative process infects review with guesswork. See Phelps Dodge Corp. v. NLRB, 313 U. S. 177, 197 [61 S.Ct. 845, 85 L.Ed. 1271] (1941).
 
 
 19
 We think that the Administrative Procedure Act and our decision in Clement-Blythe require that we vacate this portion of the order of dismissal and remand the case to the board with directions to supply the relevant findings and clarify its reasons for rejecting the union's claims. We particularize the basis for this conclusion:
 
 
 20
 The board rested its decision upon a "consideration of the scope of our order as enforced by the Court as well as the nature of the settlement before the hearing in this present proceeding * * *." Since the trial examiner limited the hearing to issues raised by the regional director, his decision does not contain any findings with respect to "the nature of the settlement." The board declined to follow the trial examiner's rationale, but it did not supply the findings relevant to the grounds upon which it rested its rejection of the union's claims. As a result, this aspect of the decision which we are asked to review does not include "a statement of * * * findings * * * on all material issues of fact * * * presented on the record * * *." 5 U.S.C.A. § 557(c). Since there are no findings which define the terms of the "settlement," we are unable to determine what the board found in its "nature" to preclude relief.[3]
 
 
 21
 The board's cryptic reference to "the scope of our order" is no less difficult to decipher. The board's original order in the unfair labor practice proceeding adopted the original trial examiner's recommendation. This recommendation required Overnite to "restore the wages, hours and working conditions" which had previously prevailed under Rutherford management. Overnite was directed to accomplish this by making back-wage and other payments to affected employees. It was also ordered to "make the employees whole * * * for any other economic loss they suffered as a result of Respondent's [Overnite's] unfair labor practice."
 
 
 22
 It is possible to construe this language to encompass the union's claims since they include allegations of economic loss. The board, however, apparently rejected this possible construction for another which excluded the union's claims. But the board's opinion does not state any justification for the selection of one interpretation over the other. Any attempt by us to speculate about what the board might have meant would involve the kind of "guesswork" which it was the purpose of § 557(c) to avoid. We have, therefore, concluded that in this regard the case must be returned to the board.
 
 
 23
 Petition denied in part and granted in part, and case remanded.
 
 
 
 Notes:
 
 
 [1]
 Chauffeurs, Teamsters and Helpers Local Union No. 171, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America
 
 
 [2]
 Although the union contended unsuccessfully before the board that over-the-road drivers were entitled to the benefits of the board's remedial order, it seeks no review of the adverse decision on this point. The union's brief waives any claim that check-off of dues was a recoverable benefit
 
 
 [3]
 Before this court counsel for the board asserted that the board was aware of the union's objections, that it concluded that there had been substantial compliance with its remedial order, and that in deciding to reject the union's contentions, it exercised its discretion reasonably and not arbitrarily or capriciously. The difficulty with the board's position is that the record does not reflect what remedy, if any, was obtained administratively with regard to seniority, discharge, health and welfare, and pension provisions. If no remedy was obtained, the record is barren of the reasons which justified this result. In argument counsel for the board and Overnite both made a number of factual assertions in this regard, but we regard factual statements of counsel a poor substitute for a formal record unless the parties are in a position to stipulate as to what transpired