NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

DODSON'S MARKET, INC., d/b/a Dod-
son IGA Foodliner, Respondent.

No. 75–3152.

United States Court of Appeals,
Ninth Circuit.

May 9, 1977.

Paul J. Spielberg, Atty., argued, Elliott Moore, Gen. Counsel, N. L. R. B., Washington, D. C., for petitioner.

Eugene R. Nielson, argued, Gordon, Thomas, Honeywell, Malanca, Peterson & Ohern, Tacoma, Wash., for respondent.

Before KOELSCH, DUNIWAY and GOODWIN, Circuit Judges.

DUNIWAY, Circuit Judge:

The issue in this case is the propriety of back pay awards made by the National Labor Relations Board to three employees of Dodson's Market, Inc. (Dodson's). We enforce the Board's supplemental order as it pertains to Wortley and Gerber and deny enforcement as to Assink.

In a prior proceeding, the Board found that Dodson's had violated the National Labor Relations Act, 29 U.S.C. § 151 et seq., by reducing the hours of work of some of its employees in retaliation for their signing union representation cards. We granted enforcement of the order on the Board's petition. 83 LRRM 2987, 71 LC ¶ 13,842 (9 Cir. 1973). Thereafter, in a supplemental proceeding, the Board made back pay awards to the three employees. Its decision is reported at 218 N.L.R.B. No. 191. The Board now petitions for enforcement of its awards.

## I. Wortley's Back Pay Award.

Dodson's raises two defenses to the back pay award to Wortley. First, Dodson's argues that its voluntary payment of back pay to two other employees relieves it from back pay liability to Wortley. Its argument is that if the two employees, who were senior to Wortley and had already received their back pay, had actually worked the hours for which they have now been compensated by back pay, Wortley, as a junior employee, would not have worked the hours which she did, much less the extra hours for which the Board ordered reimbursement.

That argument ignores the fact that the reduction in hours for Wortley was a direct result of Dodson's unfair labor practice. Dodson's, in response to their union activity, transferred the two senior employees out of their department and into Wortley's, thus creating a surplus of employees there. This was the excuse for reducing Wortley's

hours. If the senior employees had not been transferred to Wortley's department, her hours would not have been reduced. It is thus irrelevant that Dodson's has already paid back pay to the two senior employees.

■ Next, Dodson's argues that, although Wortley worked 40 hours per week from May, 1970, until her hours were discriminatorily reduced in August, 1970, a 40–hour work week was not an appropriate measure of back pay for her because of the seasonal nature of Dodson's business. Dodson's says that she would not have been working a 40–hour week after the summer ended.

Although Dodson's introduced testimony that less work was available after the summer months, it did not show how much less was available or how that would have affected Wortley. The Board has wide discretion in selecting an appropriate back pay formula, and once it has done so, the burden is on the employer to produce evidence to mitigate liability. *NLRB v. Carpenters Union, Local 180,* 9 Cir., 1970, 433 F.2d 934, 935. Because Wortley had worked full time for four months before Dodson's unlawfully reduced her hours, the Board's selection of a 40–hour work week as a basis for her back pay computation was reasonable.

## II. *Gerber's Back Pay Award.*

Dodson's claims that the record does not contain substantial evidence to support the Board's finding that Dodson's, rather than Gerber, limited Gerber's available hours upon reinstatement. We disagree.

■■ Dodson's maintains that when it called Gerber back to work she imposed two requirements, that she would not work on Sundays and that she would not work the same shift as another employee, Vander Yacht. Gerber testified that Sunday had been her regular day off before her discharge. Leland Dodson's testimony contradicted that statement, but the Administrative Law Judge and the Board refused to credit his testimony. We will not disturb

findings on credibility unless "a clear preponderance of the evidence convinces [us] that they are incorrect." *NLRB v. International Longshoremen's and Warehousemen's Union,* 9 Cir., 1975, 514 F.2d 481, 483. Thus, Gerber's refusal to work on Sunday would not justify a reduction in her hours.

Next, Gerber never testified that she refused to work with Vander Yacht. Only Leland Dodson said that, and his testimony was discredited by the Board. Finally, Leland Dodson admitted at the unfair labor practice hearing that he offered Gerber reinstatement at the same "reduced hours" as the other checkers were working.

The Board's finding that Dodson's unlawfully limited Gerber's hours upon her reinstatement is supported by substantial evidence on the record as a whole. *Universal Camera Corporation v. NLRB,* 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

## III. *Assink's Back Pay Award.*

■ The unfair labor practice which resulted in the "reduction" in Assink's hours, according to the Board, took place in August, 1970. Assink was hired in May, 1971, and had not previously worked for Dodson's. She was seeking full-time employment but she was not promised it, and she accepted part time employment on the terms offered. She was not an employee or even an applicant for employment when Dodson's committed its unfair labor practices. Indeed, she was never mentioned in the unfair labor practice proceedings.

The Board argues that Assink would have been hired full-time but for the prior discrimination, and thus her injury was the "derivative result" of Dodson's unlawful conduct. This carries the "but for" notion too far. The "but for" connection may be necessary to establish liability, but its presence does not necessarily result in liability. Here there is no indication of any direct, or even indirect, discrimination by Dodson's against Assink, either in hiring her or after her employment. Nothing in the record would support a finding that Dodson's of-

fered her part time employment instead of full-time employment because she was a union member or union supporter or even for the purpose of discouraging possible support of the union by her or by others. No discrimination was directed at her. In this respect her case differs from the only case cited by the Board, *Majestic Molded Products, Inc. v. NLRB,* 2 Cir., 1964, 330 F.2d 603. There, the employer laid off a group of employees, some union supporters and some not, for the purpose of discouraging support of the union. They were all victims of the discrimination. Not so here. Our case more closely resembles *Chauffeurs, Teamsters and Helpers Local 171 v. NLRB,* 4 Cir., 1970, 425 F.2d 157, where new employees were held not entitled to back pay.

The purpose of a back pay order is "to vindicate the public policy of the statute [National Labor Relations Act] by making the employees whole for losses suffered on account of an unfair labor practice." *Nathanson v. NLRB,* 1952, 344 U.S. 25, 27, 73 S.Ct. 80, 82, 97 L.Ed. 23. Although the Board's discretion in fashioning such a remedy is broad, the back pay award to Assink does not effectuate the policies of the Act. We can find no discrimination against Assink for which she should be made whole because she did not suffer loss on account of Dodson's unfair labor practice. *See also, NLRB v. Strong,* 1969, 393 U.S. 357, 359, 89 S.Ct. 541, 21 L.Ed.2d 546.

We enforce the supplemental order as it relates to Wortley and Gerber, and we deny enforcement of the award to Assink.