**AERONAVES DE MEXICO, S.A., aka Aeromexico, Plaintiff-Appellant,**

v.

**McDONNELL DOUGLAS CORPORATION, Menasco Manufacturing Company, and Cleveland Pneumatic Company, Defendants-Appellees.**

No. 80–5819.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 5, 1982.

Decided May 19, 1982.

Frank A. Silane, Condon & Forsyth, Los Angeles, Cal., for plaintiff-appellant.

Robert Forgnone, Gregory Hollows, Gibson, Dunn & Crutcher, Los Angeles, Cal., Joseph E. Gregorich, H. G. Robert Fong, Kirtland & Packard, Floyd C. Dodson, Ralph S. LaMontagne, Jr., Kern, Wooley & Maloney, Los Angeles, Cal., for defendants-appellees.

Before WRIGHT and FLETCHER, Circuit Judges, and MEREDITH,* District Judge.

MEREDITH, District Judge:

Aeromexico brought an action to recover compensatory damages and damages for loss of use resulting from the failure of the right main landing gear truck beam of a DC–10 aircraft leased by it when the aircraft landed at Orly Airport in Paris, France on December 11, 1976. The failure caused no injuries to passengers or crew, but did damage the aircraft's landing gear assembly. The damage was subsequently repaired, and the aircraft was returned to service.

Named as defendants were McDonnell Douglas Corporation (MDC), manufacturer of the aircraft, and two MDC subcontractors who designed and manufactured the aircraft's landing gear assembly, Menasco Manufacturing Company and Cleveland Pneumatic Company. Shell Oil Company was also named as a defendant, but was dismissed from the lawsuit by stipulation. Recovery was sought on the theories of negligence, strict liability, and breach of warranty.

After completion of extensive pretrial discovery, MDC, Menasco, and Cleveland Pneumatic each filed motions for summary judgment. A hearing on the MDC and Menasco motions was held on September 15, 1980. A hearing was held on the Cleveland Pneumatic motion on October 6, 1980. Thereafter, the district court issued three separate judgments and orders granting all three motions for summary judgment in favor of MDC, Menasco, and Cleveland Pneumatic, respectively, and against Aeromexico. The basis for its decision in each case was that Aeromexico had contractually waived its negligence claims.[1] We affirm.

The Aeromexico DC–10 which is the subject of this lawsuit was owned by McDonnell Douglas Finance Company (MDFC) and leased by Aeromexico through an intermediary, National Aircraft Leasing (NAL). MDFC had purchased the aircraft directly from MDC and assigned its rights under the purchase agreement to NAL on the condition that the aircraft be leased to Aeromexico. This arrangement was necessary because the government of Mexico would not allow Aeromexico, the national airline of Mexico, to purchase the aircraft outright, and MDFC could not, for financial reasons, lease the aircraft directly to Aeromexico.

Although Aeromexico leased the aircraft from NAL, it negotiated the terms of what became the MDC–MDFC purchase agreement for the aircraft and insisted on the

---

* Honorable James H. Meredith, Senior United States District Judge, Eastern District of Missouri, sitting by designation.

1. Aeromexico conceded that its warranty claims were barred by the controlling statute of limitations and that its strict liability theory was inapplicable where, as here, the dispute is between large corporate enterprises which have allocated risks by contract. *See Scandinavian Airlines System v. United Aircraft Corporation*, 601 F.2d 425, 428–29 (9th Cir. 1979); *S. A. Empresa De Viacao Aerea Rio Grandense v. Boeing*, 641 F.2d 746, 753–54 (9th Cir. 1981).

warranty provisions in that agreement.[2] The contract by which MDFC assigned its rights under the purchase agreement to NAL specifically provided that NAL took the rights to the aircraft subject to precisely the same warranty provisions as existed in the MDC–MDFC purchase agreement. The lease agreement between Aeromexico and NAL provided, in turn, that Aeromexico would be assigned such warranty rights as NAL held under its agreement with MDFC. Thus, the intent and the net effect of the MDC–MDFC purchase agreement, the MDFC–NAL contract assignment, and the NAL–Aeromexico lease was to give Aeromexico warranty rights identical to those under the original MDC–MDFC purchase agreement, the terms of which Aeromexico negotiated. The district court found, and Aeromexico does not contest, that Aeromexico obtained in excess of $400,000 in benefits from the use of these warranty rights.

■ The warranty provisions in the purchase agreement contained an exculpatory clause which bars negligence actions such as this against MDC. The validity of the exculpatory clause is not contested. By accepting an assignment of the purchase agreement's warranty provisions, Aeromexico agreed to be bound by this exculpatory clause. Cal.Com.Code § 2210(4) [U.C.C. § 2–210(4)]; 1 Anderson, Uniform Commercial Code, § 2–210:17 at 370 (2d ed. 1970). Aeromexico also became bound by this clause when it availed itself of benefits under the warranty provisions. Cal.Civ. Code § 1589. The language of the various agreements at issue here is clear and unambiguous, and there is no evidence that Aero-

mexico intended for them to have a contrary effect. Accordingly, the district court did not err in granting summary judgment against Aeromexico and in favor of MDC on its negligence claims.[3]

■ The warranty provisions in the purchase agreement also bar a negligence claim by Aeromexico against Menasco. Through the purchase agreement, Aeromexico and MDC allocated between them all risks of loss arising from defects in the aircraft and its components. Aeromexico had no greater rights, and MDC had no greater liabilities, than those provided in the agreement. As noted, MDC gave, and Aeromexico received, substantial benefits in exchange for this allocation of risks.

Were Aeromexico allowed to proceed directly against Menasco, Menasco could file a third party claim against MDC.[4] If successful, this claim would put ultimate liability for defects in the aircraft component on MDC, thus nullifying the contractual allocation of risks between MDC and Aeromexico. MDC would be denied the benefit of its bargain, and in as much as Aeromexico would recover for defects in the aircraft component after having already obtained benefits in exchange for limiting its right to recover for such defects, it would receive a windfall.

■ In addition, there is no dispute that neither Menasco, nor its predecessor, Howmet, played any role in the actual design or manufacture of the landing gear used on the damaged Aeromexico aircraft. This was a Series 30 DC–10. The record is clear that Howmet participated only in the devel-

---

2. The warranty provisions in the purchase agreement were taken from a contract between MDC and Iberia Airlines, the national airline of Spain. Aeromexico felt that they were more favorable than those originally proposed by MDC, and it demanded equal treatment.

3. Although the district court did not reach the issue, it is clear that Aeromexico's claims against MDC, as well as Menasco and Cleveland Pneumatic, for loss of use of the aircraft would also be barred by the California rule which precludes recovery for economic loss under a negligence theory. *S. M. Wilson & Co.*

*v. Smith Intern., Inc.*, 587 F.2d 1363, 1376 (9th Cir. 1978).

4. The district court found that such a claim was possible, and Aeromexico has failed to show anything in the contract between MDC and Howmet, Menasco's predecessor, which would preclude it. By contrast, Article 4 of the manufacturing contract between MDC and Cleveland Pneumatic appears to specifically bar Cleveland Pneumatic from obtaining indemnity from MDC for liability resulting from manufacturing defects in the landing gear.

opment of the landing gear for the Series 10 DC–10, a lighter aircraft. The design process for the Series 30 DC–10 landing gear did not begin until three years after the Series 10 DC–10 landing gear was designed. Only MDC and Cleveland Pneumatic were involved in the design and manufacture of the landing gear for the Series 30 aircraft. *See S. A. Empresa De Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.,* 669 F.2d 1337, 1338–41 (9th Cir. 1982) (no liability for subcontractor who did not participate in design).

True, the Series 30 landing gear was apparently substantially the same as the Series 10 landing gear. Nevertheless, even if, arguendo, Howmet were negligent in the design of the Series 10 landing gear system, that negligence cannot be imputed to the design of the Series 30 system. When Howmet worked on the Series 10 system, it could only have foreseen that its negligence might result in damage to Series 10 aircraft. It could not reasonably have foreseen that its design might cause damage to a Series 30 aircraft, whose landing gear system was designed and supervised by someone else years later.

The decision to incorporate the Series 10 design into the Series 30 system was made voluntarily by MDC, an experienced aircraft manufacturer, and MDC had the power to make all necessary modifications. Howmet was not consulted as to the desirability of any such modifications, nor did it have a duty to come forward to advise as to such modifications. Under these circumstances, neither logic nor law support the contention that Menasco, as successor to Howmet, was the proximate cause of the damage to Aeromexico's aircraft. Summary judgment in favor of Menasco was therefore proper.

Finally, the warranty provisions in the purchase agreement also bar negligence claims by Aeromexico against Cleveland Pneumatic. Those provisions explicitly extend to components of the aircraft manufactured by entities other than MDC, regardless of who supplied the design specifications. Warranty and Service Life Policy, Part I, Paragraphs A and B. Under the terms of the purchase agreement, MDC agreed to obtain warranties from the subcontractors of component parts enforceable by the "buyer" of the aircraft.[5] Purchase Agreement, Article 14(A). If problems arose with components manufactured by a subcontractor and the subcontractor disclaimed liability under any such warranty, the buyer was nonetheless protected under the terms of the MDC Warranty and Service Life Policy. In exchange for this added protection, the buyer agreed to assign to MDC, and MDC would be subrogated to, all of the buyer's claims against the subcontractor. Purchase Agreement, Article 14(C).

▇ In this case, there is no genuine dispute that MDC obtained a warranty from Cleveland Pneumatic for the landing gear component (MDC–Cleveland Pneumatic manufacturing contract, Article 5) and that Cleveland Pneumatic disclaimed liability under that warranty. As the district court correctly concluded, Aeromexico's rights against Cleveland Pneumatic were therefore assigned, by operation of law under the purchase agreement, to MDC. MDC not having reassigned these rights to Aeromexico, Aeromexico is therefore without standing to bring an independent cause of action against Cleveland Pneumatic.

AFFIRMED.

---

**5.** Aeromexico had the status of "buyer" within the meaning of the purchase agreement, as previously suggested, by operation of the MDFC–NAL contract assignment and the NAL–Aeromexico lease. Aeromexico's argument that these provisions of the purchase agreement apply only to the immediate buyer, MDFC, is wholly without merit.