**ALFRED M. LEWIS, INC., Petitioner and Cross-Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent and Cross-Petitioner.**

Nos. 80–7444, 80–7611.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 15, 1981.

Decided July 20, 1982.

Raymond M. Hunter, Ryley, Carlock & Ralston, Phoenix, Ariz., for petitioner and cross-respondent.

Joseph A. Oertel, Washington, D. C., for respondent and cross-petitioner.

Before ANDERSON and FLETCHER, Circuit Judges, and FITZGERALD,* District Judge.

FLETCHER, Circuit Judge:

Alfred M. Lewis, Inc. (the Company), petitions for review of a supplemental order entered by the National Labor Relations Board (Board) in the compliance proceedings that followed this court's enforcement of the original order of the Board. The Board cross-applies for enforcement of the supplemental order. We enforce the order as modified below.

In 1975 the Company adopted a production quota system that included procedures for counseling and disciplining employees who failed to meet the quota. George McCown and two other employees were fired for not meeting the quota. The Board later found that the production quota system violated § 8(a)(5) and (1) of the National Labor Relations Act because the Company had instituted the system without first bargaining with the union and had prohibited employees from having union representation at the counseling sessions. 229 N.L.R.B. 757 (1977). We enforced the Board's order in *Alfred M. Lewis, Inc. v. NLRB*, 587 F.2d 403 (9th Cir. 1978). Our judgment required the Company to reinstate and make whole all employees who

had been discharged "solely as a result of" the production quota system.

The Company made whole all the affected employees except McCown. In the compliance proceedings, the ALJ found that the Company had fired McCown because of his "poor attitude" towards his supervisor as well as his failure to meet production standards. The ALJ concluded, therefore, that McCown had not been fired "solely as a result of" the quota system. The Board disagreed. It found that McCown's attitudinal problem resulted from the unlawful production quotas and counseling sessions and thus did not constitute a separate reason for the discharge. Accordingly, the Board ordered that McCown be offered reinstatement and back pay. 250 N.L.R.B. 1392 (1980).

On appeal, the Company argues that: (1) substantial evidence does not support the Board's finding that McCown was fired solely as a result of the quota system; and (2) the Board improperly calculated the amount of back pay due McCown.

I

Cause of McCown's Discharge

■ A disagreement between the Board and the ALJ does not alter the substantial evidence standard of review. *Kallmann v. NLRB*, 640 F.2d 1094, 1098 (9th Cir. 1981) (quoting *NLRB v. Tischler*, 615 F.2d 509, 511 (9th Cir. 1980)). Where, as here, the Board did not reject the ALJ's credibility determinations but merely drew different inferences from the evidence, the deference accorded to findings runs in favor of the Board, not the ALJ. *See id.*

■ The Board's inference that McCown's "poor attitude" was a result of the production quota system is supported by substantial evidence. Although McCown's attitude may have been poor before the institution of the quotas, the record shows that he was not in any danger of being

* The Honorable James M. Fitzgerald, United States District Judge for the District of Alaska, sitting by designation.

fired until he resisted the quota system and related counseling. The only attitudinal problem mentioned in the series of memoranda that the Company wrote immediately before firing McCown is his resistance to the quotas and counseling. We conclude that our earlier judgment requiring reinstatement and back pay for employees fired solely as a result of the new system necessarily includes relief for employees who reacted negatively to the unlawful system and developed a poor attitude as a result.

## II

### The Amount of Back Pay

 The Board awarded McCown back pay from the date of his discharge until the date the Company makes a valid offer of reinstatement, less McCown's net interim earnings from other employment. The Board enjoys broad discretion in calculating back pay, subject only to limited judicial review. *NLRB v. Dodson's Market, Inc.*, 553 F.2d 617, 619 (9th Cir. 1977); *see also Golden Day Schools, Inc. v. NLRB*, 644 F.2d 834, 840 (9th Cir. 1981). Once the General Counsel has established the amount of back pay due to the discharged employee, the burden is on the employer to come forward with evidence to mitigate its liability. *NLRB v. Mercy Peninsula Ambulance Service*, 589 F.2d 1014, 1017 (9th Cir. 1979); *NLRB v. Superior Roofing Co.*, 460 F.2d 1240, 1241 (9th Cir. 1972).

 The Company seeks to reduce the amount of the award on the ground that McCown failed to make reasonable efforts to find equivalent employment during the nineteen months of unemployment that followed his discharge. The Company relies primarily on *Mercy Peninsula*, in which this court refused to enforce an order awarding back pay to a discharged employee who had pursued other employment opportunities with "disinterest" and had spent most of his time on other projects. 589 F.2d at 1018

n.6. In this case, the record does not show that McCown's efforts were insincere. Moreover, his period of unemployment coincided with a period of substantial unemployment in the Phoenix area, whereas the employee in *Mercy Peninsula* admitted that he could have easily found employment had he seriously looked for it. *Id.* Thus, the Company has not met its burden of proving that McCown failed to make a diligent search for work.

 The Company also argues that the award should be reduced because McCown rejected a job offer he received from another employer two or three months after his discharge. A back pay award may not include losses due to the employee's willful refusal of equivalent employment. *NLRB v. Alaska S.S. Co.*, 211 F.2d 357, 360 (9th Cir. 1954); *NLRB v. J. G. Boswell Co.*, 136 F.2d 585, 597 (9th Cir. 1943). The Board found, however, that the job offered McCown was not "equivalent" employment because it paid only $2.35 an hour and McCown had received $6.40 an hour from the Company. We need not reach the question whether an employee should be required to lower his sights after a reasonable period of unsuccessful searching for equivalent-paying work. *See NLRB v. Madison Courier, Inc.*, 472 F.2d 1307, 1320–21 (D.C. Cir.1972). It is sufficient in this case to hold that the Board reasonably concluded that McCown was not required to accept a 60 per cent pay cut within three months of his discharge. Indeed, if McCown had accepted such a drastic pay cut so soon after his discharge, he might have been subject to a reduction in back pay on the ground that he had willfully incurred a loss. *See Madison Courier*, 472 F.2d at 1321.

 Finally, the Company argues that McCown would not have worked during an economic strike of Company employees that occurred after he was fired.[1] The Board applied its rule that employees wrongfully

---

1. The Company also argues that the amount of unemployment compensation received by McCown should be deducted from the back pay award. This argument is specious. *See NLRB v. Gullett Gin Co.*, 340 U.S. 361, 364–65, 71 S.Ct. 337, 339–40, 95 L.Ed. 337 (1951). *Cf. Kauffman v. Sidereal Corp.*, 677 F.2d 767, 769–71 (9th Cir. 1982) (adopting *Gullett Gin* rule for back pay awards under Title VII).

discharged before an economic strike are entitled to back pay accruing during the strike. *See Webel Feed Mills & Pike Transit Co.*, 229 N.L.R.B. 178, 181 (1977). The reason for the rule is that the employer's own discrimination often makes it impossible to determine whether the employee would have joined the strike in the absence of the discrimination; the employer should not be allowed to benefit from the uncertainty caused by its discrimination. *See NLRB v. Rogers Manufacturing Co.*, 406 F.2d 1106, 1109 (6th Cir. 1969); *Winn-Dixie Stores, Inc.*, 206 N.L.R.B. 777 (1973), *enf'd*, 502 F.2d 1151 (4th Cir. 1974). This case however, is unusual. McCown testified unequivocally that he would have taken part in the strike if he had been employed by the Company at the time. Because there is no uncertainty about whether McCown would have struck, there is no reason to include pay for the strike period in the back pay award.

Therefore, we deny enforcement of the Board's order to the extent that it includes the strike period in the back pay award. The order is enforced in all other respects.

Enforced as modified.