**STANDARD MATERIALS, INC.,**
**Petitioner Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS**
**BOARD, Respondent**
**Cross–Petitioner.**

No. 87–4927.

United States Court of Appeals,
Fifth Circuit.

Jan. 12, 1989.

---

**1.** At 1183–84, *supra.*

Sloan McCloskey, Marie Breaux Stroud, Metairie, La., for petitioner-cross-respondent.

Hugh Frank Malone, New Orleans, La., Joseph A. Oertel, Howard E. Perlstein, Asst. Attys. Gen., Aileen Armstrong, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., for respondent cross-petitioner.

Before WISDOM, GEE and RUBIN, Circuit Judges.

GEE, Circuit Judge:

Standard Materials, Inc. appeals the National Labor Relations Board's Second Supplemental Decision and Order issued on September 30, 1987, reported at 286 NLRB No. 52 (1987). The Board has made cross application for enforcement of the order. The order upheld, with minor variations, the December 14, 1982 decision of the administrative law judge regarding backpay for employees terminated in violation of 29 U.S.C. § 158(a)(1) and (3). We affirm in part, and vacate and remand in part.

## FACTS

Standard Materials is located in Slidell, Louisiana, and is wholly owned by its president, Virgil James Scogin. In May or June 1977, the employees of the company met with Mr. Scogin to discuss their dissatisfaction with their wages and working conditions. The meeting and subsequent requests for action did not resolve the complaints, and on July 18 approximately 31 employees struck. Two days later, the striking employees signed union authorization cards with the United Steelworkers of America, AFL–CIO, designating it as their bargaining agent.

| | |
|---|---|
| B.B. Allen | $4,231 |
| Ellis L. Beard | $3,426 |
| Theodore Charles | $11 |
| Charles Cousin, Jr. | $3,512 |
| Levy Crawford | $1,869 |
| Irwin J. Edwards | $3,318 |
| Clyde Favre | $5,028 |
| Harold Hart | $6,035 |
| Tally Hinton | $1,521 |
| Claude Ray Jenkins | $3,600 |
| James Jenkins | $2,401 |
| John Leonard | $0 |

The day after the union agreed to represent the employees, the company's attorney was informed that the strikers had joined the union but were prepared to return to work pending negotiations on wages and working conditions. The company's attorney in turn spoke with Mr. Scogin, who refused to recognize the union or allow the strikers to return to work. The union then filed a representation petition with the National Labor Relations Board and wrote to the company stating the strike was over. Mr. Scogin still refused to allow the workers to return to work and personally gave the strikers their final paychecks.

In September 1977, an action was filed against the respondent, Standard Materials, Inc., for unfair labor practices under section 8(a)(3) and (1) of the National Labor Relations Act. See 29 U.S.C. § 158(a)(3) and (1). The National Labor Relations Board found that the company had violated these provisions by refusing to reinstate the strikers as vacancies arose. The Board ordered the company to reinstate the strikers to their former jobs, or to jobs that were substantially equivalent to them. The Board also required payment for lost earnings. *Standard Materials, Inc.*, 237 NLRB 1136, 1138–49 (1978). We affirmed this order in *Standard Materials, Inc. v. NLRB*, 604 F.2d 449 (5th Cir.1979) (memorandum opinion).

This appeal stems from the determination of backpay in the Board's Second Supplemental Decision and Order. The respondent alleges error in calculating employees' backpay, while the Board's cross application seeks enforcement of its order. The Board found backpay was due to the employees in the following amounts:

| | |
|---|---|
| Robert Orange | $5,690 |
| Alt Owens | $8,077 |
| Oliver Lee Owens | $2,071 |
| Titus Owens | $4,381 |
| Alexander Paige | $6,817 |
| Albert Panks, Sr. | $437 |
| Albert Panks, Jr. | $0 |
| Edgar Peters | $3,664 |
| Ervin Pope | $11,823 |
| James W. Square | $276 |
| Edward Wise | $1,496 |
| Roosevelt Wise | $887 |

We affirm the Board's order for twenty employees, but reverse and remand for Irwin J. Edwards and Titus Owens.

## ANALYSIS

This court must affirm the findings and conclusions of the National Labor Relations Board so long as they are based on "substantial evidence." *See, e.g., Virginia Electric Co. v. National Labor Relations Board,* 319 U.S. 533, 539, 63 S.Ct. 1214, 1218, 87 L.Ed. 1568 (1942); *Labor Board v. Link–Belt Co.,* 311 U.S. 584, 585–86, 61 S.Ct. 358, 359–60, 85 L.Ed. 368 (1941); *I.A. of M. v. Labor Board,* 311 U.S. 72, 75, 61 S.Ct. 83, 86, 85 L.Ed. 50 (1940). The Supreme Court has stated that the National Labor Relations Board carries out the policies of the Act, and that "Congress [left] the adaptation of means to end to the empiric process of administration." *Phelps Dodge Corp. v. Labor Board,* 313 U.S. 177, 194, 61 S.Ct. 845, 852, 85 L.Ed. 1271 (1941). As a result, the court should not intrude on the Board's discretion, which is "subject to limited judicial review." *Id. See also NLRB v. Dodson's Market, Inc.,* 553 F.2d 617, 619 (9th Cir.1977).

In making their determinations of backpay, the Board properly followed the tenets of *Nathanson v. NLRB,* 344 U.S. 25, 27, 73 S.Ct. 80, 82, 97 L.Ed. 23 (1952), "by making the employees whole for losses suffered on account of an unfair labor practice." *Id.* As the Supreme Court wrote in *NLRB v. Gullett Gin Co.,* 340 U.S. 361, 363, 71 S.Ct. 337, 339, 95 L.Ed. 337 (1950), "(E)mployees may be reimbursed for earnings lost by reason of the wrongful discharge, from which should be deducted net earnings of employees from other employment during the back-pay period, and also sums which they failed without excuse to earn (citations omitted)." *Id.*

The National Labor Relations Board, with minor exceptions found that all the employees in the instant case exercised reasonable diligence in seeking interim work. To the extent that these findings relating to efforts at mitigating loss of earnings are based on credibility choices between conflicting testimony of witnesses at trial, the findings will stand unless "a clear preponderance of the evidence convinces that they are incorrect." *NLRB v. International Longshoremen's & Warehousemen's Union,* 514 F.2d 481, 483 (9th Cir.1975).

■ In accord with these principles, we have carefully reviewed the facts for each of the twenty-two employees of Standard Materials, Inc. For twenty of the employees, we affirm the findings of the Board. Although we might have questioned the efforts of some of the employees to mitigate their damages, the Board consistently credited the testimony of the employees over the witnesses presented on behalf of the company. Since substantial evidence existed for the decisions, we will not disturb them. However, we find error in the determination of damages for two of the individuals. Each will be treated in turn.

■ First, the Board awarded Irwin J. Edwards $3,318 in backpay. Mr. Edwards, however, had secured employment in August 1977 with Pratt Farnsworth in New Orleans, Louisiana. He drove his car from Slidell to the job for thirteen days before quitting because of car trouble. At trial the company's attorney asked about the employment.

Q: "Now, Mr. Edwards, isn't it true that there are numerous busses from Slidell to New Orleans?"

A: "Yes, it is."

Q: "And that numerous people commute in, like this pick-up truck?"

A: "Yes."

Q: "Did you make any efforts to make alternate arrangements to get to work for Pratt Farnsworth?"

A: "No; not really, not after my car stopped."

The discussion later turned to when Mr. Edwards bought another car.

Q. "You bought another car? How long was that?"

A. "I guess at about October (1977)."

Q. "Did you make any attempt to contact Pratt Farnsworth again after you bought a car?"

A. "Not recently; no."

Q. "I'm talking about after you got a car, did you call Pratt Farnsworth to the effect that, 'I've got transportation. Can I go back to work?'"

A. "No; I didn't."

There is no simple test to determine whether an individual appropriately mitigated damages. One circuit has stated that a discriminatee "is not necessarily obligated to accept employment which is located an unreasonable distance from his home." *NLRB v. Madison Courier Co.*, 472 F.2d 1307, 1319 (D.C.Cir.1972), *citing Florence Printing Co. v. NLRB*, 376 F.2d 216, 221 (4th Cir.), *cert. denied*, 389 U.S. 840, 88 S.Ct. 68, 19 L.Ed.2d 104 (1967). The Board must decide whether an employee was reasonable in "accepting, rejecting, or seeking a particular employment." *Madison Courier, supra* at n. 37.

The Board reported that Mr. Edwards' salary for the 13 days he worked at Pratt Farnsworth was $514. This amounts to approximately $5.00 per hour, which is $1 more per hour than he received from Standard Materials. Mr. Edwards quit his job, although he was earning more there than at his prior job. He was aware alternate transportation was available, but made no effort to join a carpool. Rather than ride the bus, he quit.

The Board itself has refused to award backpay when a discriminatee "voluntarily quits alternative employment without good reason." *NLRB v. Mastro Plastics Corp.*, 354 F.2d 170, 174 n. 3 (2d Cir.1965), *cert. denied*, 384 U.S. 972, 86 S.Ct. 1862, 16 L.Ed.2d 682 (1966), *cited with approval* in *Madison Courier, supra*, at 1317. While we might not require an employee to seek a job 32 miles from home, once the employee has secured it, he may only quit for a good reason. The Supreme Court in fact relied on *Ozark Hardwood Co.*, 119 NLRB 1130, 1139 (1957), *remanded on other grounds*, 282 F.2d 1 (8th Cir.1960), for this proposition:

While a claimant is not obligated, in the first instance, to seek work outside the general geographical area of his pre-discrimination employment, he may be found to have wilfully incurred a loss if he voluntarily relinquishes an interim job outside the area, which he obtained during the payback period.

We do not hold that 32 miles from the employee's former work site is "outside the general geographical area." Whether a distance is outside the area will vary for each location. We simply observe that if 32 miles away is outside the area, Mr. Edwards still terminated his employment "without good reason." If the distance is within the general area, he had even less of a reason for quitting his job.

On these facts, we conclude that Mr. Edwards incurred a willful loss of earnings when he quit his job with Pratt Farnsworth, knowing that alternate transportation was available. Mr. Edwards should receive compensation only for the period of time between his dismissal from Standard Materials and employment with Pratt Farnsworth. We reverse his award of backpay and remand to the Board to determine the dates of these events and adjust the award consistent with these findings.

The other individual whose award of backpay may not stand is Titus Owens. The Board determined Mr. Owens' backpay at $4,381. Mr. Owens had been employed with Standard Materials as a truck driver at $4 per hour. His backpay was calculated from July 22, 1977 to March 8, 1978. As *Madison Courier Co.* has held:

In order to be entitled to backpay, an employee must at least make reasonable efforts to find new employment which is *substantially equivalent to the position [which he was discriminatorily deprived of] and is suitable to a person of his background and experience.*

*Id.* at 1318.

While there is no requirement to accept distasteful or dangerous employment, a clear responsibility exists to accept "substantially equivalent" jobs. *Id.* at 1318–19. Nor must an employee accept jobs that pay significantly less than their

former positions, for such employment is not properly deemed "equivalent." *See, e.g., Alfred M. Lewis, Inc. v. National Labor Relations Board,* 681 F.2d 1154, 1156 (9th Cir.1982).

In the instant case, the Board specifically credited the testimony of Rocky Lumpkin, who was associated with the Industrial Concrete and Supply Company. Mr. Lumpkin testified as follows about a conversation he had with Mr. Owens:

It occurred around the last part of September [1977], probably the last week. I'd been working about three weeks and I offered him a job. Well, he confronted me wanting to know if I had any openings for a truckdriver....I needed good truckdrivers. He had a lot of experience working for Standard Materials and I told him "yes," and the highest paid man on the payroll was $5.50, and he told me it'd take $8.50 to get him, and I just told him ... I couldn't be that unfair to the rest of my men.

The Board credited this testimony but nonetheless found Titus Owens diligently and in good faith sought interim work and incurred no willful loss of earnings. The Board reasoned that since Mr. Owens was attempting to improve his situation and was looking for a job paying more than $5.50 he was mitigating his losses in good faith. This, however, is not the law. Mr. Owens had a duty to mitigate his losses by accepting "substantially equivalent" employment. *Madison Courier, supra,* at 1318. The offer of employment was for precisely the type of job from which he had been improperly terminated. The salary offered, judging from the conversation Mr. Lumpkin testified to, would have been greater than the salary Mr. Owens received from Standard Materials. It is not diligent or reasonable to reject employment in the same field and at a higher salary. Mr. Owens' backpay must therefore be limited to the two month period between the wrongful termination at Standard Materials and the job offer from Mr. Lumpkin. The Board's award is therefore reversed and the matter remanded for calculations according with these findings.

We must address two other arguments by the petitioner. First, Standard Materials claims that the Board improperly failed to deduct unemployment compensation paid to their former employees during the payback period. They cite no case law for their position, and none in fact exists. Whatever appeal the argument may have on policy grounds, the Supreme Court has clearly spoken on the issue. On appeal, the Supreme Court overruled the Fifth Circuit's holding which allowed deduction of unemployment compensation from payback awards. *NLRB v. Gullett Gin Co.,* 340 U.S. 361, 71 S.Ct. 337, 95 L.Ed. 337 (1951). The Court stated that "the Board had the power ... in refusing to deduct the unemployment compensation payments from payback...." *Id.* at 364, 71 S.Ct. at 339. The Board in the instant case thus properly refused deduction of unemployment compensation.

Second, the petitioner claims that the Board should have tolled payback for failure to report earnings and that the employees' reinstatement rights were extinguished by failure to report periodically that they were still interested in returning to work. The Board, however, found that the employees' failure to report earnings was not fraudulent, and the petitioner failed to prove fraud. We agree. The reinstatement issue was previously litigated and is thus barred by res judicata.

## CONCLUSION

The backpay awards for all employees of Standard Materials except for Irwin Edwards and Titus Owens, are AFFIRMED. The awards to Mr. Edwards and Mr. Owens are VACATED and their causes are REMANDED for recalculation in accord with this opinion.