### GULLETT GIN CO., Inc. v. NATIONAL LABOR RELATIONS BOARD.

#### No. 12798.

United States Court of Appeals
Fifth Circuit.

Jan. 30, 1950.

Rehearing Denied March 18, 1950.

500

Conrad Meyer, III, New Orleans, La., Lawrence A. Molony, New Orleans, La., for petitioner.

I. J. Gromfine, Attorney, David P. Findling, Assoc. Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Nat. Labor Relations Bd., Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and HOLMES and McCORD, Circuit Judges.

HUTCHESON, Chief Judge.

While the order sought to be enforced contains provisions ordering the respondent to cease and desist from (a) discouraging membership in any labor organization and (b) interfering with, or coercing, its employees in the right of self organization, these are merely secondary or incidental provisions of the order. Its prime provisions are those requiring respondent to offer reinstatement to, and make whole, ten tinshop employees[1] because of the discrimination against them charged and found.

Unlike the situation obtaining in the usual case of claimed discriminatory discharges, there is no claim here that these persons were discharged on account of their activity in favor of or against a particular union or labor organization which had organized, or was campaigning to organize, the plant. The primary claim made and supported by evidence is that, while in the course of taking in their own behalf concerted activity for the mutual aid or protection of the employees involved, activity protected by Sec. 7 of the Labor Management Relations Act, 29 U.S.C.A. § 157, the named persons were peremptorily discharged in violation of their rights under the act and contrary to the duties and obligations of their employer, and that such discharges constituted an unfair labor practice in violation of Sec. 8(a) (1) of the act, 29 U.S.C.A. § 158(a) (1).

As a further and independent ground of decision, the Board found: that these employees, assembled for the purpose of gaining a raise in wages, constituted a labor organization as defined in Sec. 2(5) of the act, 29 U.S.C.A. § 152(5); that their discharge amounted to a discrimination in the terms of hire or tenure of employment, discouraging membership in such organization; and that it was, therefore, in violation of Sec. 8(a) (3) of the act.

The respondent, admitting that the men were discharged, urges upon us that, upon the undisputed evidence, they were discharged for insubordination in refusing to obey the order of their employer to return to work and not in the course, and because, of the exercise of rights guaranteed to them under the act.

The Board found that there was no insubordination, no refusal to obey orders to return to work, in fact, no positive orders of that kind given, and that their discharge, coming, as it did, in the course of a meeting arranged between the representative of the employer and these tin shop employees for the purpose of discussing wages, was a discharge in violation of the rights guaranteed by the act.

Contesting the findings of the Board, the respondent insists, first, that while it is true that their discharge occurred at the end of a conference, invited by the employees to discuss a wage demand, the discharge had nothing to do with the demand itself. It was based upon the employees' refusal to go back to work when told to do so after the employer had explained that, because of a pending representation

1. Ellis W. Pechon, Van Buren Bennett, Corydon L. Pechon, J. W. Bankston, Leander Hayden, Elmer Hayden, Jesse J. Hayden, Carl E. Warren, Irving Branch, and Jesse Cutrer.

election in the plant, it could do nothing about the demand, and the discussion had come to an end.

The Board did not accept this version of what occurred as a correct one. Neither do we. While different participants tell the tale of the occurrence differently, these differences are not material. Indeed on what we regard as the controlling issues in the case, there are no differences.

The record shows, without conflict; that the meeting was arranged for and held in the shop; that there was a discussion at the meeting; that Wallace, for the respondent, patiently and carefully explained that he could do nothing, on account of the pending election for representation, about the demand; and that instead of accepting this statement without demur, the employees persisted in trying to further discuss the question with him.

According to Wallace's own testimony, this is the way the discharges came about. After he had finished explaining the situation and the men had made no move in acceptance of it, he said, "Boys, I would like for you to stay on, but there is one of two things you can do. You can quit, and if you quit, you are going to lose your seniority and you wont be able to vote in this election. The other one is, you can take this job and go on with it, and wait until the outcome of the election. Now what are you going to do?" They waited a while, and they didn't [sic] what to do. There was not a murmur out of anyone. I said, 'Well, Boys, I am not sure that we can have you sitting around on tables and not having you do anything. I am afraid I will have to make up your minds for you. I am going to fire you and all of you consider yourselves fired as of this date.' "

Witnesses for the men gave a little different version of the conversations and differed a little from Wallace as to the time given the men to answer his question, Wallace putting it at 5 minutes, some of the men putting it as practically no time at all.

This difference, however, is not at all material. The question put peremptorily was not, under the circumstances a fair question. But if it had been, this would not help respondent because the employees were not permitted to answer it. As Wallace testified, he answered it for them. In the light of this record, and particularly as made by Mr. Wallace's own testimony, respondent's contention that there was insubordination or refusal to obey an order must be rejected as wholly unsubstantiated. No order was given, no order was disobeyed. The discharges were not reasonable. They were arbitrary and unreasonable.

In addition to its contention that the Board's findings of fact, that the men were not discharged for insubordination, are not supported, the respondent makes the further contention that, assuming that the men were discharged for failure to accept their employer's reasons for not granting a wage demand, this would not violate the National Labor Relations Act, as amended, 29 U.S.C.A. § 151 et seq. In support of this view, respondent, relying upon well established law that an employer may discharge an employee for any reason, reasonable or unreasonable, so long as it is not for a reason prohibited by the act, insists that, conceding that the discharges were arbitrary and unreasonable, they were not for reasons the act prohibits.

Correctly insisting that, if an employer discharges his employees in a moment of anger or caprice, but not because of activities guaranteed under, or for reasons prohibited by the act, such discharges are not unfair labor practices, respondent argues that, at the worst for it, no more than that can be found here.

■ We cannot at all agree. This argument proceeds upon a premise which has already been rejected. This premise is that the employees refused to work under the conditions which had been prescribed by the employer, that is, that there would be no raises at this time, and that they were discharged for that refusal. One difficulty with the point here, the same which presented itself when it was made earlier, is that the employees did not refuse to work. A further difficulty with it is that while a discharge in caprice or anger is not in and of itself a violation of the act, if that caprice or anger arises out

502

of, or may be reasonably attributed to, resentment against employees for pressing their rights under the act, the act specifically makes such discharges unfair labor practices.

All that occurred, occurred in the course, and as a result of the effort of the men to obtain a raise in wages. A discussion followed. A peremptory question was put to them. They were not allowed to answer it. The employer answered it for them. And because they did not answer with the celerity the employer desired, they were fired out of hand.

Upon the clearest principles, these discharges were in the course, and because, of their engaging in activities protected by the statute. They were prohibited by, and the respondent was guilty of a violation of, Sec. 8(a) (1) of the act.

The order requiring reinstatement of the men discharged and making them whole is fully supported by evidence, and the petition to enforce it is granted.

This being so, it is not greatly important whether the board was correct in its supporting or ancillary finding that there was also a violation of Sec. 8(a) (3), but the matter is directly presented for our decision, and, without laboring the point, we hold that, in so finding and holding, the Board was wrong.

The evidence makes it perfectly clear that there was no difference or dispute, between the employer and the discharged employees, as to what union or organization they had joined or should join, or should represent them. Nothing in the whole discussion remotely points to a difference between them arising out of, or traceable to questions of joining or not joining any particular labor organization. Certainly they were not discharged because they demanded or showed preference for one organization over the other or for the purpose of discouraging membership in any. Certainly they had a right to present their grievances in a body as they did. N. L. R. B. v. Schwartz, 5 Cir., 146 F.2d 773. It is to say, though, that no question of who should represent them or of discouraging membership in any particular organization

was in any way involved. Enforcement of the cease and desist portion of the order, Sec. 1(2) and (b) will, therefore, be denied.

There remains for consideration only the respondent's complaint that in holding and ordering that respondent could not deduct, from any back pay award, such amounts of money as have been received by any of the discharged employees from the Louisiana Workmen's Compensation, the Board erred. On the authority of Republic Steel Corp. v. N. L. R. B., 311 U. S. 7, 61 S.Ct. 77, 85 L.Ed. 6, we agree with respondent.

We do not agree with the view of the majority in N. L. R. B. v. Marshall Field & Co., 7 Cir., 129 F.2d 169, that such a holding and order was a lawful and proper one for the Board to make. In the Per Curiam opinion of the Supreme Court, in Marshall Field & Co. v. N. L. R. B., 318 U.S. 253, 254, 63 S.Ct. 585, 87 L.Ed. 744, the Supreme Court makes it clear that, while affirming the judgment on procedural grounds, it did not give its approval to that holding.

The decree to be presented enforcing Sec. 2(a) (b) and (c) of the order will, therefore, be qualified by providing that any such moneys so received may be deducted in determining back pay awards.

Modified and enforced.