## NATIONAL LABOR RELATIONS BOARD *v.* GULLETT GIN CO.

No. 122.   Argued November 29, 1950.—Decided January 15, 1951.

*A. Norman Somers* argued the cause for petitioner. *Solicitor General Perlman, David P. Findling* and *Mozart G. Ratner* filed a brief for petitioner.

*Conrad Meyer, III,* argued the cause for respondent. With him on the brief was *Robert R. Rainold.*

MR. JUSTICE MINTON delivered the opinion of the Court.

The question presented here is whether the National Labor Relations Board must deduct from back-pay awards to discriminatorily discharged employees sums paid to them as unemployment compensation by a state agency.

The Board found that respondent Gullett Gin Company had discharged certain employees in violation of the National Labor Relations Act, as amended, 61 Stat. 136, 29 U. S. C. (Supp. III) §§ 141 *et seq.,* and ordered their reinstatement with back pay. Although the order provided for deduction of the employees' net earnings and willful losses of wages, if any, the Board refused to deduct certain payments made by the State of Louisiana as unemployment compensation. The Court of Appeals for the Fifth Circuit held such payments must be deducted, and modified the order accordingly. 179 F. 2d 499. We granted certiorari because of the importance of the question presented in the administration of the Act. 340 U. S. 806.

In issuing the challenged order the Board acted under § 10 (c) of the Act, 61 Stat. 147, 29 U. S. C. (Supp. III) § 160 (c), which provides that upon finding an unfair labor practice, the Board shall issue a cease and desist order requiring the guilty party "to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this Act . . . ."

To effectuate the policies of the Act the Board has broad but not unlimited discretion. *Republic Steel Corp.* v. *Labor Board,* 311 U. S. 7, 11. "[T]he power to command affirmative action is remedial, not punitive." *Id.,* at 12. We must not, however, be more mindful of the limits of the Board's discretion than we are of our own

limited function in reviewing Board orders. In an opinion dealing with a related matter the Court cautioned:

"There is an area plainly covered by the language of the Act and an area no less plainly without it. But in the nature of things Congress could not catalogue all the devices and stratagems for circumventing the policies of the Act. Nor could it define the whole gamut of remedies to effectuate these policies in an infinite variety of specific situations. Congress met these difficulties by leaving the adaptation of means to end to the empiric process of administration. The exercise of the process was committed to the Board, subject to limited judicial review. Because the relation of remedy to policy is peculiarly a matter for administrative competence, courts must not enter the allowable area of the Board's discretion and must guard against the danger of sliding unconsciously from the narrow confines of law into the more spacious domain of policy." *Phelps Dodge Corp.* v. *Labor Board,* 313 U. S. 177, 194.

In effectuating the policies of the Act, the Board clearly may award back pay to discriminatorily discharged employees. This means that employees may be reimbursed for earnings lost by reason of the wrongful discharge, from which should be deducted net earnings of employees from other employment during the back-pay period, *Republic Steel* case, *supra,* and also sums which they failed without excuse to earn, *Phelps Dodge Corp.* v. *Labor Board,* 313 U. S. 177, 197–198.

In *Marshall Field & Co.* v. *Labor Board,* 318 U. S. 253, this Court held that the benefits received by employees under a state unemployment compensation act were plainly not earnings which, under the Board's order in that case, could be deducted from the back pay awarded. The question of whether the Board had the power to

make such an order was not reached for the reason that the question had not been presented to the Board as required by § 10 (e) of the National Labor Relations Act, 49 Stat. 454, 29 U. S. C. § 160 (e). The question is here on this record, and we hold that the Board had the power to enter the order in this case refusing to deduct the unemployment compensation payments from back pay, and that in so doing the Board did not abuse its discretion.

Such action may reasonably be considered to effectuate the policies of the Act. To decline to deduct state unemployment compensation benefits in computing back pay is not to make the employees more than whole, as contended by respondent. Since no consideration has been given or should be given to collateral *losses* in framing an order to reimburse employees for their lost earnings, manifestly no consideration need be given to collateral benefits which employees may have received.

But respondent argues that the benefits paid from the Louisiana Unemployment Compensation Fund were not collateral but direct benefits. With this theory we are unable to agree. Payments of unemployment compensation were not made to the employees by respondent but by the state out of state funds derived from taxation. True, these taxes were paid by employers, and thus to some extent respondent helped to create the fund. However, the payments to the employees were not made to discharge any liability or obligation of respondent, but to carry out a policy of social betterment for the benefit of the entire state. See Dart's La. Gen. Stat., 1939, § 4434.1; *In re Cassaretakis,* 289 N. Y. 119, 126, 44 N. E. 2d 391, 394–395, aff'd *sub nom. Standard Dredging Co. v. Murphy,* 319 U. S. 306; *Unemployment Compensation Commission* v. *Collins,* 182 Va. 426, 438, 29 S. E. 2d 388, 393. We think these facts plainly show the benefits to be collateral. It is thus apparent from what we have already said that failure to take them into account in order-

ing back pay does not make the employees more than "whole" as that phrase has been understood and applied.[1]

Finally, respondent urges that the Board's order imposes upon it a penalty which is beyond the remedial powers of the Board because, to the extent that unemployment compensation benefits were paid to its discharged employees, operation of the experience-rating record formula under the Louisiana Act, Dart's La. Gen. Stat., 1939 (Cum. Supp. 1949) §§ 4434.1 *et seq.,* will prevent respondent from qualifying for a lower tax rate. We doubt that the validity of a back-pay order ought to hinge on the myriad provisions of state unemployment compensation laws. Cf. *Labor Board* v. *Hearst Publications,* 322 U. S. 111, 122–124. However, even if the Louisiana law has the consequence stated by respondent, which we assume *arguendo,* this consequence does not take the order without the discretion of the Board to enter. We deem the described injury to be merely an incidental effect of an order which in other respects effectuates the policies of the federal Act. It should be emphasized that any failure of respondent to qualify for a lower tax rate would not be primarily the result of federal but of state law, designed to effectuate a public policy with which it is not the Board's function to concern itself. *Republic Steel* case, *supra.*

Our holding is supported by the fact that when Congress amended the National Labor Relations Act in 1947, the Board had for many years been following the practice of disallowing deduction for collateral benefits such as unemployment compensation.[2] During this period the

---

[1] We note that some states permit recoupment of benefits paid during a period for which the National Labor Relations Board subsequently awards back pay. *E. g., In re Skutnik,* 268 App. Div. 357, 51 N. Y. S. 2d 711. Recoupment in such situations is a matter between the State and the employees.

[2] 3 N. L. R. B. Ann. Rep. 202, n. 11 (1938); 4 N. L. R. B. Ann. Rep. 100, n. 25 (1939); 11 N. L. R. B. Ann. Rep. 50 (1946).

Board's practice had been challenged before the courts in only two cases, and in both the Board's position was sustained. *Labor Board* v. *Marshall Field & Co.,* 129 F. 2d 169; *Labor Board* v. *Brashear Freight Lines,* 127 F. 2d 198. In the course of adopting the 1947 amendments Congress considered in great detail the provisions of the earlier legislation as they had been applied by the Board.[3] Under these circumstances it is a fair assumption that by reenacting without pertinent modification the provision with which we here deal, Congress accepted the construction placed thereon by the Board and approved by the courts. See *Helvering* v. *Reynolds Co.,* 306 U. S. 110, 114–115; *Brewster* v. *Gage,* 280 U. S. 327, 337; *Norwegian Nitrogen Prod. Co.* v. *United States,* 288 U. S. 294, 313–315.

The judgment is reversed and the case remanded for enforcement of the Board's order without the objectionable modification.

*It is so ordered.*

MR. CHIEF JUSTICE VINSON took no part in the consideration or decision of this case.

---

[3] Ample evidence of this may be found in the Committee reports accompanying the bills which were the basis of the comprehensive 1947 Act. See H. R. Rep. No. 245, 80th Cong., 1st Sess.; S. Rep. No. 105, 80th Cong., 1st Sess.