**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL–CIO; and Pipeline Local Union No. 38, Affiliated With the Laborers' International Union of North America, AFL–CIO, Respondents.**

No. 84–4035.

United States Court of Appeals, Fifth Circuit.

Dec. 17, 1984.

Elliott Moore, Deputy Assoc. Gen. Counsel, William Wachter, Joseph A. Oertel, N.L.R.B., Washington, D.C., for petitioner.

Marvin Menaker, Dallas, Tex., for respondents.

Michael Dunn, Dir., Reg. 16, NLRB, Fort Worth, Tex., for other interested parties.

Before GARZA, REAVLEY and JOHNSON, Circuit Judges.

GARZA, Circuit Judge:

In an earlier proceeding in this case, the National Labor Relations Board found that the respondent Pipeline Local 38 ("Local") had violated Section 8(b)(2) of the National Labor Relations Act, 29 U.S.C. 158(b)(2), by causing the discharge of employee Mac Westmoreland. Local 38 was also found to have violated Section 8(b)(1)(A), 29 U.S.C. 158(b)(1)(A), by discriminatorily refusing to refer Local 38 members Millard Dale Cook, Tom Mitchell, Alvin Stewart, and Westmoreland ("discriminatees") pursuant to a hiring hall arrangement. In that same proceeding, the respondent Laborers' International Union ("International") was found to have violated Section 8(b)(1)(A) with respect to Mitchell and Stewart during the period in which the Local was under the trusteeship of the International. This order was enforced by the United States Court of Appeals for the District of Columbia Circuit. 673 F.2d 552 (1981).

The case returned to the Board for a determination as to what amount of backpay would be appropriate for each discriminatee pursuant to 29 C.F.R. §§ 102.52–102.-59 (1983). The General Counsel is now petitioning this court to enforce the resultant backpay specification order.

## I.

The facts of this case are discussed in the two earlier Board proceedings, 247 NLRB 1250 (1980) and 268 NLRB 18 (1983), and need not to be restated in detail here. Briefly, in October, 1976, the International placed the Local under trusteeship and appointed David Solly acting business manager. In May, 1977, Solly was elected business manager and the trusteeship ended.

As found by the Board in the underlying case and affirmed by the United States Court of Appeals for the District of Columbia Circuit, Solly's tenure from its onset was characterized by his attempts to intimidate and retaliate against anyone who opposed him politically in the Local. The Board further found Solly's attitude had manifested itself as physical violence against Cook and Stewart and as discriminatory referrals against all four discriminatees. These actions resulted in the Board's finding the violations of the Act outlined above. Accordingly, the Board ordered backpay jointly and severally from the Local and International during the period of the trusteeship, and against the Local alone for the later period.

The sole issue before the Board, and now this court, in this second proceeding is the appropriate amount of backpay due the discriminatees.

## II.

The respondents first maintain that the Board erred in failing to allow a deduction from the backpay award for the transportation, lodging, and food expenses that the discriminatees would necessarily have paid out of their wages on a job site.[1] They argue that this unadjusted backpay award gives the discriminatees a windfall and, in effect, punishes the respondents.

■ It is true that the purpose of a backpay award is to make an employee whole rather than to punish an employer or labor organization. *Republic Steel Corp.*

*v. NLRB*, 311 U.S. 7, 12, 61 S.Ct. 77, 79, 85 L.Ed. 6 (1940). However, the Board has broad discretion in fashioning relief, and that discretion will not be overturned by a reviewing court "unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." *Virginia Electric & Power Company v. NLRB*, 319 U.S. 533, 63 S.Ct. 1214, 87 L.Ed. 1568 (1943).

■ The backpay award in this case is clearly not an abuse of the discretion that the Congress has given the Board in this area. In *NLRB v. Gullett Gin Company*, 340 U.S. 361, 71 S.Ct. 337, 95 L.Ed. 337 (1950), the Supreme Court held that the policies of the Act do not mandate that the Board allow the deduction of unemployment compensation benefits from backpay awards. The Court noted that "manifestly no consideration need be given to collateral benefits which employees may have received." 340 U.S. at 364, 71 S.Ct. at 339. In *NLRB v. East Texas Steel Castings Company*, 116 NLRB 1336, 1342 (1956), enf'd, 255 F.2d 284 (5th Cir.1958), we enforced a Board order that extended the *Gullett Gin* holding with respect to collateral benefits to "personal or domestic economies ... resulting from the discrimination." 16 NLRB at 1342. Transportation expenses saved by virtue of not having to travel to work during a period for which backpay was later awarded were held to be personal or domestic economies of this type. Therefore, no deduction of these expenses from the backpay award was allowed.

The principles enunciated in *East Texas* govern the case at bar and we reaffirm them. For that reason, we find no merit in the respondents' contention that the Board *must* allow a deduction from a backpay award of any transportation, lodging, and food expenses saved by a discriminatee during the period covered by an award.

---

1. The respondents maintain that these expenses can range from twenty-five to more than fifty percent of a pipeline laborer's total wages. For the purpose of this opinion, we may assume that those figures are reasonable estimates of the amounts involved.

### III.

The respondents next contend that the Board used inappropriate formulas in determining the amount of backpay that the respondents owed the four discriminatees. This argument has two main prongs: first, that all four backpay awards are erroneous in that they are based on the hours worked in prior years by the individual discriminatees rather than on the hours worked by an average laborer in the hiring hall; and, second, that even assuming that the individual discriminatees' hours worked comprise the appropriate base, the Board's choice of years for comparison is arbitrary. Neither point has merit.

### A.

■ With respect to the Board's decision to use the hours of the individual discriminatees in past years rather than the hours of a hypothetical average employee, we need only say that the Board's choice of remedy was not arbitrary. *See NLRB v. Charley Toppino & Sons, Inc.*, 358 F.2d 94, 97 (5th Cir.1966). The Board chose to use the individual discriminatees' past hours because it determined that the average employee figure would be distorted by the existence of many pipeliners on the hiring hall roles who worked few hours on an annual basis. This determination clearly justifies the Board's choice of base hours in this case. That the Board has chosen to rely on the hours of an average employee in other cases or, indeed, that it might have chosen to do so in this case is simply irrelevant. *See Bagel Bakers Council of Greater New York v. NLRB*, 555 F.2d 304, 305 (2d Cir.1977).

### B.

■ The respondents also challenge the Board's choice of particular base years with respect to the individual discriminatees. The respondents note that different base years were used for the various discriminatees, an approach that, they maintain, is impermissible. With respect to Stewart, the hours figure was taken from the year immediately preceding the discrimination against him, while Mitchell's hours figure was obtained from an average of his previous five years. As for Westmoreland and Cook, the Board utilized their hours figures from the second year preceding the period in which they suffered discrimination rather than the figure from the immediately preceding year. In effect, the respondents argue, the Board used four distinct formulas to calculate backpay to the four discriminatees.

Once again, the respondents have misconceived our role as a reviewing court. With respect to every discriminatee, the Board had a rational basis for its choice of base years.[2] We therefore find no error.

### IV.

The respondents also argue that the discriminatees failed to take reasonable steps to mitigate the backpay that would eventually be due them. This contention centers on two acts by the discriminatees: first, their failure to accept referrals from the Local's hiring hall, and, second, their failure to look diligently for work elsewhere.

### A.

■ The discriminatees' failure to accept hiring hall referrals from the Local provides no basis for reducing the backpay awards in this case. As the Board noted below, the respondents have already contested and lost on the issue of good faith

---

**2.** The figure utilized with respect to Stewart, the hours from the year immediately preceding the discrimination, is admittedly the most straightforward. However, there was ample reason to depart from it with respect to the other discriminatees. Mitchell's average hours from the previous five years were used because of evidence that he had sustained a leg injury in the past; this approach was employed in order to avoid the distortion possible from the choice of a single year. The second year preceding the discrimination was used as a base for Westmoreland and Cook because the Board found evidence of "taint" from possible earlier discriminatory acts in the year immediately preceding the discriminatory acts that were actually adjudicated in this case. In every case, the Board arrived at a rational annual hours figure.

referrals. In earlier proceedings in this case, the Board, with the approval of the District of Columbia Circuit, found that the referrals from the hiring hall had been discriminatory as to all four individuals. The respondents are now precluded from attempting to show that the discriminatees refused good faith referrals and thereby failed to mitigate the amount of backpay due.[3]

## B.

■ In order to determine if the discriminatees have taken reasonable steps to mitigate the backpay due them by seeking employment with entities other than the respondents, we must look at three of the discriminatees individually. For the reasons that follow, we find that these discriminatees took reasonable steps to mitigate.

With respect to Cook, the Board found that he had attempted to sell used cars one year, although that effort was not financially successful. The following year, Cook earned only about one hundred dollars a quarter; the next two years he made nothing. However, low interim earnings alone do not demonstrate a failure to attempt to mitigate. Moreover, an attempt to assert wilful loss of earnings in order to reduce a backpay award is an affirmative defense; the proponent of the defense bears the burden of persuasion. *NLRB v. Mooney Aircraft, Inc.*, 366 F.2d 809, 813 (5th Cir. 1966). Here, the respondents have simply failed to carry that burden in that they have failed to show that suitable employment was available for Cook.

The same reasoning applies to Westmoreland's situation. The Board noted that although Westmoreland's efforts to find work during the last three quarters of 1977 did not "involve a high degree of diligence, they do appear to pass the threshold of acceptability." *See NLRB v. Pilot Freight Carriers, Inc.*, 604 F.2d 375, 377 (5th Cir.1979). Indeed, during four months of that time, he was working on family automobiles, although there was evidence of some income from self-employment during the period. Westmoreland also testified that he had sought work during the period, and the Board chose to believe that testimony. Moreover, in 1978, Westmoreland located employment, albeit at a lower wage than he earned working for the respondents. On these facts, we cannot say that the respondents have proven a wilful loss of earnings by Westmoreland.

The question of wilful loss of earnings or failure to mitigate also arises with respect to Mitchell, and, again, no such wilful loss has been shown by the respondents. It is true that Mitchell developed rather serious phlebitis and therefore limited his job search to an area within two hundred miles or so of his home. However, the respondents did not demonstrate that this restriction affected Mitchell's ability to find work. Moreover, although Mitchell did accept employment only to quit shortly thereafter, the employment was more strenuous than the trade that Mitchell had performed for the respondents. His quitting therefore does not have the effect of tolling backpay liability, as the respondents have failed to prove that he is either incapable or unwilling to perform his customary work. The Board chose to resolve all doubt against the wrong-doers in this case, and we uphold that choice.

## V.

■ Finally, the Board's order must be modified slightly with regard to the medical expenses incurred by the discriminatees during the backpay period. The parties stipulated that only medical expenses nor-

---

**3.** The respondents attempt to avoid this preclusive effect by relying on footnote 6 in the Board's underlying decision, which states that "[w]hether Stewart or Mitchell mitigated their loss of pay or to what extent they were available to work is, of course, a matter that must be ascertained at the compliance stage of the proceeding." 247 N.L.R.B. at 1250 n. 6. The Board below read this language to leave open the question of possible employment with some entity other than the respondents. In view of the circumstances, that reading is the only reasonable one.

mally covered by the Health and Welfare Fund would be reimbursed as part of any backpay award. The General Counsel concedes that nothing in the record supports a finding that the medical expenses involved were covered by the Plan. Accordingly, that portion of the Board's order is vacated, and in its place, the respondents are ordered to reimburse ·discriminatees for medical expenses that qualify under the Plan's rules and regulations.

### VI.

We have considered all of the respondents' arguments and, with the exception of the medical reimbursement issue, find the arguments to be without merit. For that reason, the order of the Board is

ENFORCED AS MODIFIED.