BOWES, Judge.
This case is before us for the third time on appeal. The present appeal is taken from a judgment of the district court decreeing that it was proper for the St. John the Baptist Parish School Board (hereinafter the School Board) to deduct amounts received by the plaintiffs herein in unemployment benefits from the back wages paid by the School Board. We affirm.
The case initially appeared before us in 1986 on the question of a contractual dispute between certain teachers in the parish system and the School Board. For a history of the case and facts see: S.J.A.E. v. St. John Baptist Parish School Bd., 494 So.2d 553 (La.App. 5 Cir.1986). Briefly, a number of teachers alleged that the School Board violated the terms of a collective bargaining agreement in implementing a reduction in force. We found that the School Board improperly gave preference to certain teachers with less seniority than others due to the participation of those others in a strike action against the Board. In reviewing and amending the judgment of the trial court in part, we ordered the following:
Accordingly, we reverse the judgment of the trial judge in the cases of appellants Marie Jackson, Sandra Fritsche, M. Martha Leach, Ivy W. Schnyder, Rosemary Roy, Marie Millet, Patricia Nicholas, Matilda Catorie, Faye Reine, Carlis Johnson, Marilyn Scott, Susan Cook, Donna M. Perrilloux, Claudia Brown, Ann Marie Fenroy, Norma Dukes, Carolyn Boudouin and Peggy Tassin. In the cases of the foregoing plaintiffs, we order that they be reinstated with full uninterrupted seniority and be placed in the same economic position that they would have enjoyed had they not participated in the strike action and not have been dismissed in February, 1985, including all salary and insurance benefits, and defendant’s contribution to the appropriate retirement system.
The Supreme Court granted writs in part at 497 So.2d 1387 (La.1986) with this disposition:
Granted in part and remanded. Judgment of the court of appeal is reversed insofar as it reinstated all of plaintiffs and made them whole economically. Case remanded to the court of appeal to consider whether some of the plaintiffs would have been laid off in any event had the St. John the Baptist School Board Reduction in Force Policy been implemented correctly; otherwise denied.
*159 On remand to this court, we determined that the record before us was inadequate to enable us to make such a determination and remanded the matter back to the district court to decide whether any of the plaintiffs would also have been laid off under the use of a seniority list prepared in compliance with the contract of October 9, 1984, and to give its reasons for its determinations so that same can be properly reviewed by this court and the Supreme Court in the event of another appeal. See S.J.A.E. v. St. John Baptist Parish School Bd., 503 So.2d 69 (La.App. 5 Cir.1987).
On March 27, 1987, a joint motion and order for a partial consent judgment was filed. In that judgment, Faye Reine, Marie Millet, Rosemary Roy, Carolyn Baudin, Marie Jackson, Claudia Brown, Ivy Schnyder, and Peggy Tassin (hereinafter plaintiffs) agreed that they would receive gross back pay no later than March 27, 1987, in amounts respectively due to them. The judgment provided that those plaintiffs retained the right to litigate the question of “the lawfulness of the offset or deduction of unemployment compensation they received applied to the backpay allotments .... ” In April, 1988, the trial court, pursuant to a motion filed by the plaintiffs,' rendered judgment decreeing:
In the opinion of the Court, this judgment is clearly dictated by the Court of Appeals whose instructions were to place the parties in the same economic position that they would have been had the dispute not been necessary.
In deducting the unemployment compensation from the backwages of petitioners, the School Board acted within the guidelines of the Court of Appeals decree. Therefore, the Plaintiffs petition for further relief is denied.
On appeal, plaintiffs urge that the trial court was in error in permitting the offset because such order violates the “collateral source rule”; because such offsets are generally disfavored in employment litigation;' and because public policy disfavors these deductions.
The collateral source rule is generally understood to mean that a tortfeasor may not benefit because of payments made by collateral sources (those other than the tortfeasor available to the victim), such as insurance benefits independent of the wrongdoer’s procuration. See Hudson v. Thompson, 422 So.2d 640 (La.App. 3 Cir.1982); Teague v. Barnes, 519 So.2d 817 (La.App. 5 Cir.1988). It is apparent that the rule is not applicable in the present case which involves a contractual dispute.
The two cases cited by appellant for the proposition that unemployment offsets are generally disfavored in employment litigation are inapplicable to the present case. Both Alongi v. Department of Police, 480 So.2d 1001 (La.App. 4 Cir.1985), and Serpas v. Department of Police, 529 So.2d 138 (La.App. 4 Cir.1988) involved interpretation of LSA-R.S. 49:113, which deals with wages of employees illegally separated from state or city civil service. That statute provides that wages earned in private employment shall be credited against wages withheld during the period of illegal separation. In both Alongi and Serpas, supra, the court narrowly interpreted the statute and held that'the credits were limited to the precise wording of the statute, refusing to offset the back wages with unemployment benefits. We have no such guiding statute in the present case from which we may attempt to derive a legislative intent regarding whether unemployment benefits may be credited against salaries for non civil service employees. On the other hand, public policy regarding unemployment has been declared in R.S. 23:1471, as follows:
As a guide to the interpretation and application of this Chapter, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this state. Unemployment is therefore a subject of general interest and concern which requires appropriate action by the Legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social secur *160 ity requires protection against this greatest hazard of our economic life. This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The Legislature, therefore, declares that in its considered judgment the public good, and the general welfare of the citizens of this state require the enactment of this measure, for the compulsory setting aside of unemployment reserves to be used for the benefit of unemployed persons.
We find nothing in the public policy as thus expressed which would support double recovery by an employee of unemployment benefits and wages for the same (overlapping) period of time. Plaintiffs cite NLRB v. Gullett Gin Co., 340 U.S. 361, 71 S.Ct. 337, 95 L.Ed. 337 (1951) as support for their position. Once again, however, that case involved a discussion of the National Labor Relations Act and whether or not the National Labor Relations Board could deduct from backwages to employees who were discriminatorily discharged sums paid as unemployment compensation. In finding that a refusal of the Board to make such deductions was not an abuse of discretion, the court discussed the practice of the Board for many years of disallowing deductions for (what it termed) collateral benefits such as unemployment compensation. The decision is based on the National Labor Relations Act and its application to the case at hand, and effectuated the policies of that Act. It was not an across-the-board finding that unemployment compensation should not be allowed to offset other awards. Additionally, Gullett Gin has been interpreted as holding that the decision of offset is left to the sound discretion of the trial court. See also Marshall v. Goodyear Tire & Rubber Co., 554 F.2d 730 (5 Cir.1977); Merriweather v. Hercules, Inc., 631 F.2d 1161 (5 Cir.1980).
Finally, appellant argues that the Louisiana Unemployment Compensation Act itself prohibits direct or indirect waivers, releases, or commutations of rights or benefits under the Act by employees, citing LSA-R.S. 23:1691, which states in pertinent part:
No agreement by an individual to waive, release, or commute his rights to benefits or any other rights under this Chapter shall be valid. No agreement by any individual in the employ of any person or concern to pay all or any portion of an employer’s contribution, required under this Chapter, from such employer, shall be valid. No employer shall directly or indirectly make or require or accept any deduction from wages to finance the employer’s contributions required from him, require or accept any waiver of any right hereunder by any individual in his employ, discriminate in regard to the hiring or tenure of work or any term or condition of work of any individual on account of his claiming benefits under this Chapter, or in any manner obstruct or impede the filing of claims for benefits. [Emphasis added]
Appellant argues that to allow offset in this case would be an indirect “deduction” from wages in contravention of 23:1691. We disagree. The offset does not operate to finance the employer’s contributions in light of our order to place the plaintiffs in the same economic position. Furthermore, we are of the opinion that permitting an offset in the present case effectuates an intent to deny double recovery found in the compensation statutes. Collateral resources are routinely considered in determining eligibility for employment benefits provided by statute. For example, LSA-R.S. 23:1601(7) disqualifies altogether or reduces the available compensation of those individuals who re-' ceive wages, Worker’s Compensation benefits, pension payments, etc. R.S. 23:1225 provides for reduction of Worker’s Compensation for those who receive unemployment, social security benefits, etc. Therefore, we are of the opinion that if any policy exists, it appears to exist in favor of permitting offsets such as the one at issue.
*161 We find no abuse of discretion and no manifest error in the judgment of the trial court denying the plaintiffs petition for further relief and finding that the School Board properly deducted unemployment compensation from the back wages of the plaintiffs/appellants.
For-the foregoing reasons, the judgment is affirmed. Costs are taxed to appellants.
AFFIRMED.