**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SECRETARY OF LABOR, on behalf of
Cletis R. Wamsley, Robert A.
Lewis, John B. Taylor, Clark D.
Williamson, and Samuel Coyle,
Petitioner,

No. 95-1130

v.

MUTUAL MINING, INCORPORATED;
FEDERAL MINE SAFETY AND HEALTH
REVIEW COMMISSION,
Respondents.

MUTUAL MINING, INCORPORATED,
Petitioner,

v.

SECRETARY OF LABOR, on behalf of
Cletis R. Wamsley, Robert A.

No. 95-1212

Lewis, John B. Taylor, Clark D.
Williamson, and Samuel Coyle;
FEDERAL MINE SAFETY AND HEALTH
REVIEW COMMISSION,
Respondents.

On Petitions for Review of an Order
of the Federal Mine Safety and Health Review Commission.
(93-395-WEVA-D, 93-396-WEVA-D, 93-397-WEVA-D,
93-398-WEVA-D)

Argued: November 3, 1995

Decided: April 3, 1996

Before WILKINSON, Chief Judge, and WIDENER and
WILLIAMS, Circuit Judges.

_____

Affirmed in part and reversed in part by published opinion. Chief
Judge Wilkinson wrote the majority opinion, in which Judge Williams
joined. Judge Widener wrote an opinion concurring in all but § III(B)
of the majority opinion.

_____

## COUNSEL

**ARGUED:** Ellen Leslie Beard, UNITED STATES DEPARTMENT
OF LABOR, Washington, D.C., for Petitioner. James Gerard Zissler,
JACKSON & KELLY, Washington, D.C., for Respondents. **ON
BRIEF:** Thomas S. Williamson, Jr., Solicitor of Labor, Steven J.
Mandel, Deputy Associate Solicitor, UNITED STATES DEPART-
MENT OF LABOR, Washington, D.C., for Petitioner. L. Anthony
George, JACKSON & KELLY, Denver, Colorado, for Respondent
Mutual Mining.

_____

## OPINION

WILKINSON, Chief Judge:

The Secretary of Labor, on behalf of five miners, and Mutual Min-
ing, Inc. ("Mutual") both petition for review of an order of the Federal
Mine Safety and Health Review Commission. Mutual contends that
the Commission erred when it found that Mutual's discharge of five
miners violated the Federal Mine Safety and Health Act of 1977. 30
U.S.C. § 801 et seq. The Secretary, in turn, challenges the Commis-
sion's decision to deduct unemployment compensation from the
miner's back pay awards. We find that substantial evidence supports
the finding of a violation of the Mine Act. We further find, however,
that the Commission erred when it ordered the deduction of unem-
ployment benefits from the back pay award owed each miner. In sum,
we affirm in part, and reverse in part the Commission's decision.

I.

In December, 1992, Mutual discharged a number of employees of its Logan, West Virginia surface mine. Three of those employees -- Robert Lewis, John Taylor and Cletis Wamsley -- constituted the local union's safety committee at the Logan mine; Taylor served as its chairman. As part of their duties, Wamsley and Taylor participated in a safety inspection of the mine on December 17, 1992. After the inspection, the union safety committee presented a list of safety violations to mine management. This list included various fire hazards and numerous problems with pieces of equipment, including fuel leaks, missing parts, and defective safety alarms. The next day, the union submitted that same list to the Mine Safety and Health Administration (MSHA) and requested an inspection of the mine as authorized by the Mine Act. 30 U.S.C. § 813(g)(1).

The following Monday, December 21st, MSHA commenced an inspection of the mine. MSHA inspectors provided mine management with a copy of the complaint giving rise to the inspection, and the managers commented that the list of alleged safety violations accompanying the complaint was identical to the one submitted to them only days before by the union safety committee. MSHA ultimately issued numerous citations to Mutual as a result of its inspection.

On the same day that MSHA inspected the mine, Mutual laid off twelve employees without warning. All three members of the safety committee were laid off. Taylor, the chairman, was the most senior employee discharged. Five miners -- the three members of the safety committee and Clark Williamson and Samuel Coyle-- complained to the Secretary that their discharges violated the Mine Act.[1]

After an investigation, the Secretary filed a complaint with the Commission alleging that Mutual's discharge of the miners violated the Mine Act. According to the Secretary, the discharge was in retaliation for the union's safety run and the ensuing MSHA inspection,

_____

[1] Mutual subsequently recalled Williamson in January, 1993 and Taylor and Coyle in April, 1993. A Commission ALJ ordered the immediate temporary reinstatement of the two remaining miners, Wamsley and Lewis, in August, 1993. 30 U.S.C. § 815(c)(2).

3

both protected activities under the Act. 30 U.S.C.§§ 813(g)(1), 815(c)(1). Mutual denied the allegation, maintaining that the miners were laid off for legitimate business reasons. A Commission ALJ agreed with the Secretary. He ordered Mutual to provide back pay to each of the miners, reduced by the amount of unemployment compensation each had collected, and also assessed a civil penalty of $5000. Both the Secretary and Mutual petitioned for discretionary review with the Commission, 30 U.S.C. § 823(d)(2), which the Commission denied. The Secretary and Mutual then petitioned for review in this court.**2** 30 U.S.C. §§ 816(a), (b).

II.

We first address Mutual's contention that the discharge of the miners did not violate the Act. We conclude that substantial evidence supports the ALJ's ruling that the discharges were unlawful. See 30 U.S.C. § 816(a)(1).

The Mine Act recognizes that mine employees can play an important role in accomplishing the health and safety goals embodied in the Act. Consequently, when miners have a reasonable belief that a violation of the Act's health or safety standards exists,"such miner or representative shall have a right to obtain an immediate inspection by giving notice to the Secretary . . . of such violation or danger." 30 U.S.C. § 813(g)(1). In order to protect miners who exercise these rights, an employer cannot "discharge or in any manner discriminate against . . . [a] miner . . . because such miner . . . has filed or made a complaint under or related to this chapter." 30 U.S.C. § 815(c)(1). Protected complaints under the Act include those made to mine operators or to MSHA itself. Id.

There is ample evidence to support the Commission's conclusion that the layoffs in this case were in retaliation for activities protected under the Act. It is undisputed that mine managers knew that the union's safety run and subsequent complaint triggered MSHA's December 21st mine inspection. The layoff was unannounced and its timing, coming only hours after MSHA had started its inspection, was

_____

**2** The Secretary's motion to join Johnny Porter as a respondent/cross-petitioner in this case is denied.

4

suspicious to say the least. Such circumstances raise an inference that the layoffs were motivated by an unlawful reason. See Donovan v. Stafford Constr. Co., 732 F.2d 954, 960 (D.C. Cir. 1984). Mutual also laid off just enough miners to reach Taylor, the chairman of the union's safety committee and most senior miner discharged, without clearly violating the seniority provisions of its labor contract. Furthermore, the ALJ found that mine management was hostile to particular members of the union safety committee, especially Cletis Wamsley, and the committee's activities in general. Wamsley and the mine superintendent clashed on a number of occasions, and after listening to the parties' divergent accounts of the source of this friction, the ALJ concluded that "some of [the mine superintendent's] hostility towards Wamsley resulted from differences of opinion over safety matters." The ALJ also pointed to the mine superintendent's view that members of the safety committee were "giving him a hard time on safety matters."

Mutual claims that its discharge was motivated by economic reasons. It declares that just before the layoff it learned that its customer, Island Creek Coal Company, might drastically reduce its purchases. As the ALJ found, however, no testimony established a close proximity between the predicted demand reduction and the hastily executed December 21st discharge. The evidence, in fact, revealed that any reduction in demand was simply a return to normal levels from a temporary dramatic increase in demand in the fall of 1992. Because the same number of employees worked for Mutual prior to the boost in demand, a return to normal levels would not necessitate the discharge. Finally, as the ALJ noted, Mutual never offered any documentary evidence of a reduction in demand for its coal.

Mutual also maintained that the December 21st discharge was part of a long-planned realignment of employees from the day shift to the night shift in order to increase productivity. The ALJ observed, however, that if the discharge was part of a realignment, most of the workers should have been quickly recalled in their new "realigned" capacities, but this did not occur. The ALJ further found that "[g]iven the number of discussions Mutual Mining management had . . . concerning the realignment, I do not believe that on December 21, 1992, that they gained surprising new information which caused them to institute a lay-off instead."

5

Mutual's version of events was simply rejected by the fact-finder in favor of the Secretary's. The "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966). The decision in this case has such support, and we decline to disturb it.

III.

We next address the Secretary's claim. The ALJ, adhering to the Commission's decision in Meek v. Essroc Corp. , 15 F.M.S.H.R.C. 606, 616-18 (1993), directed that the back pay award be reduced by the amount of unemployment compensation received by each miner. The Secretary argues that unemployment compensation should not be deducted from back pay awards. He asserts that deference is owed to his view, not that of the Commission, on the deductibility of benefits and that, in any event, his view of the Act is the sounder one.

A.

The Secretary and the Commission thus flatly disagree on the question before us. Determining which interpretation is owed deference requires a close examination of the Act. Under the "split-enforcement" arrangement envisioned by the Act, the Secretary and the Commission perform distinct regulatory responsibilities. See Johnson, The Split-Enforcement Model: Some Conclusions from the OSHA and MSHA Experiences, 39 Admin. L. Rev. 315 (1987). The Act charges the Secretary with the development and enforcement of health and safety standards "for the protection of life and prevention of injuries in coal or other mines." 30 U.S.C.§ 811(a). The Secretary develops these standards by rulemaking, id., and enforces them by conducting inspections, issuing citations and proposing civil penalties for violations, 30 U.S.C. §§ 813, 814(a), 815(a), 820(a). If a party contests the Secretary's actions, the Commission adjudicates the claims and "issue[s] an order, based on findings of fact, affirming, modifying, or vacating the Secretary's citation, order, or proposed penalty, or directing other appropriate relief." 30 U.S.C. § 815(d).

Only one of these two administrative actors can retain the ability to render authoritative interpretations of the Act. The nature of the

6

functions that the Secretary and the Commission perform under the Act -- rulemaking and enforcement authority rest with the Secretary, and adjudicatory authority rests with the Commission-- has led courts to conclude that "when the Secretary and the Commission disagree on the interpretation of ambiguous provisions of the Mine Act, and both present plausible readings of the legislative text, this court owes deference to the Secretary's interpretation." Secretary of Labor v. Cannelton Indus., Inc., 867 F.2d 1432, 1433 (D.C. Cir. 1989); see also Secretary of Labor v. Western Fuels-Utah, Inc. , 900 F.2d 318, 321 (D.C. Cir. 1990). The history of the Act supports this conclusion. As the Senate report observed: "Since the Secretary of Labor is charged with responsibility for implementing this Act . . . the Secretary's interpretations of the law and regulations shall be given weight by both the Commission and the courts." S. Rep. No. 181, 95th Cong., 1st Sess. 49 (1977), reprinted in 1977 U.S.C.C.A.N. 3401, 3448.

The Secretary's role of rulemaking and enforcement explains this deference to the Secretary's interpretations of the Act. In order to promulgate health and safety standards in the first instance, the Secretary must evaluate a wide variety of information regarding the operation of the mining industry. And in enforcing these standards -- through, for instance, periodic inspections of mines and issuance of citations -- the Secretary comes into constant contact with the daily operations of the mines. See Martin v. OSHRC, 499 U.S. 144, 152 (1991). In short, developing rules and enforcing them endow the Secretary with the "historical familiarity and policymaking expertise," id. at 153, that are the basis for judicial deference to agencies. In Martin, which involved a split enforcement scheme under the Occupational Safety and Health Act of 1970 (OSH Act) similar to that in the Mine Act, the Supreme Court concluded that the Secretary's"power to render authoritative interpretations," id. at 152, of OSH Act regulations was a "`necessary adjunct' of the Secretary's powers to promulgate and to enforce national health and safety standards." Id. We do no more than follow Martin's teachings here.

The Commission, of course, performs an essential role under the split-enforcement regime established by the Act. With respect to the provisions at issue here, the Commission independently adjudicates claims brought by the Secretary, 30 U.S.C. § 815(c)(2), and orders appropriate relief, including the award of back pay. Id. But these

7

duties, like the Commission's other duties, are adjudicatory in nature. See Thunder Basin Coal Co. v. Reich, 114 S.Ct. 771, 780 (1994) (FMSHRC is "independent commission established exclusively to adjudicate Mine Act disputes.") Consistent with this adjudicatory role, the Commission's findings of fact, if supported by substantial evidence, are conclusive. 30 U.S.C. § 816(a)(1). But because the Commission adjudicates only a select number of cases and does not promulgate rules under the Act, it is not equipped with the same "historical familiarity and policymaking expertise" as the Secretary. As the Supreme Court concluded with respect to an analogous adjudicatory body, the Commission operates as a "neutral arbiter," Martin, 499 U.S. at 155, that possesses "nonpolicymaking adjudicatory powers." Id. at 154.**3**

An across-the-board rule setting the terms of back pay awards is a question upon which the Secretary's view is entitled to deference. While the Act empowers the Commission to impose back pay, Meek's rule reaches beyond an exercise of adjudicatory discretion. The Commission has decreed that in every case, no matter the nature of the circumstances, unemployment compensation shall be deducted from back pay awards. 15 F.M.S.H.R.C. at 618. Such a broad policy turns on the meaning of ambiguous statutory terms and implicates the overall purpose of the Act to improve mine health and safety. The interpretation of the Act that the Secretary presented to the Commission, Secretary of Labor ex. rel. Nantz v. Nally & Hamilton Enterprises, Inc., 16 F.M.S.H.R.C. 2208, 2216-20 (1994), though not embodied in a promulgated rule, was an exercise of authority delegated to the Secretary by Congress. Martin, 499 U.S. at 156-7. Accordingly, the Commission should have deferred to the Secretary's interpretation of the

_____

**3** It is true that the Commission exercises discretionary jurisdiction over Commission ALJ decisions that raise a "substantial question of law, policy or discretion." 30 U.S.C. § 823(d)(2)(A)(ii)(IV). But to say that the Commission reviews cases involving questions of policy is not to say that it is the final arbiter of such policies. Nor is it to say that the Commission's interpretation of the statute trumps a reasonable interpretation put forth by the Secretary. The Commission's jurisdiction is fully consistent with the deference that it, and this court, owe to the Secretary's reasonable interpretations of the Act. Energy West Mining Co. v. FMSHRC, 40 F.3d 457, 463-64 (D.C. Cir. 1994).

8

Act if it found that interpretation to be a reasonable one. Cannelton Indus., 867 F.2d at 1435, 1439; Donovan v. Carolina Stalite Co., 734 F.2d 1547, 1552 (D.C. Cir. 1984).

B.

The deference to be accorded to the Secretary is in no sense unlimited. Both the Commission and this court have the adjudicatory responsibility to determine whether the Secretary's interpretations are in accord with the Act. Exercising that responsibility here, we hold that the Secretary's view that unemployment compensation should not be deducted from back pay awards reflects a permissible reading of the Act.

The Act is silent on whether unemployment compensation should be deducted from back pay awards. But the Act makes clear that its "first priority . . . must be the health and safety of its most precious resource--the miner." 30 U.S.C. § 801(a). It charges the Secretary with the development and promulgation of "improved mandatory health or safety standards for the protection of life and prevention of injuries in coal or other mines." 30 U.S.C. § 811(a).

It is in light of the purpose and structure of the Mine Act that we find the Secretary's view of the terms of back pay awards reasonable. At the outset, we note that either the Secretary's or the Commission's across-the-board rule may provide a "windfall" to one party. If unemployment compensation is not deducted from a back pay award, a miner would be overcompensated if he were allowed to recover both unemployment benefits and back pay for the same period of unemployment. Under the Commission's rule, on the other hand, a company that has concededly violated the anti-discrimination provisions of the Act is not required to fully compensate the miner for the period of unlawful unemployment. In fact, the state unemployment compensation system, which was not designed to "discharge any liability or obligation of [the employer], but to carry out a policy of social betterment for the benefit of the entire state," NLRB v. Gullett Gin Co., 340 U.S. 361, 364 (1951), pays part of the lost wages otherwise owed by the employer.

We need not decide which of these views is the correct one; our role is simply to determine if the Secretary's view is reasonable under

9

the Act. The Supreme Court itself found a similar policy reasonable in <u>Gullett Gin</u>. Most importantly, the Secretary's interpretation effectuates the health and safety goals of the Act. Miners play a key role in implementing these goals. They are at the site of often remote mines and serve as early warning systems in reporting health and safety concerns and potential violations of the Act. 30 U.S.C. §§ 801(d), (e). Miners are permitted to accompany the Secretary on mine inspections, 30 U.S.C. § 813(f), and to obtain an immediate mine inspection by the Secretary if the miner reasonably believes a violation of the Act exists. 30 U.S.C. § 813(g)(1). Protecting from retaliation those miners who report health and safety problems is thus crucial to the Act's scheme. In this context, it was permissible for the Secretary to conclude that a policy of non-deductibility would serve the important goal of discouraging violations of the Act.

The fact that the Act provides for mandatory civil fines for those who violate it does not alter our conclusion that the Secretary's interpretation is a reasonable one. 30 U.S.C. §§ 820(a), (i). Civil fines are a general enforcement mechanism under the Act and do not preclude the availability of back pay awards, which serve different purposes. S. Rep. No. 181, at 35, <u>reprinted in</u> 1977 U.S.C.C.A.N. at 3435. In this connection, the Secretary argues that civil fines are often so nominal that they fail to deter violations of the Act, and that state laws providing for recoupment of benefits for periods covered by back pay awards make any "windfall" to the miner an illusory one. <u>See</u> W. Va. Code § 21A-10-21; <u>Board of Educ. v. Wirt</u>, 453 S.E.2d 402, 413 n.16 (W. Va. 1994). We have no need to assess the empirical validity of these assertions. It is sufficient that the Secretary's reading of the Mine Act is a reasonable one.

IV.

For the foregoing reasons, we affirm the Commission's decision with respect to Mutual Mining's violation of the anti-discrimination provisions of the Mine Act. We reverse, however, that portion of the Commission's decision that directs the Secretary to deduct unemployment compensation from the back pay awards due the five discharged miners.

<u>AFFIRMED IN PART, REVERSED IN PART</u>

10

WIDENER, Circuit Judge, concurring:

I concur in the result and in all of the opinion except Part III-B, in which part I do not concur.

I concur in upholding the Secretary's construction of the statute rather than the Commission's only because of the decision of the court in Martin v. OSHRC, 499 U.S. 144 (1991).

11