**NATIONAL LABOR RELATIONS BOARD, Plaintiff,**

v.

**STATE OF ILLINOIS DEPARTMENT OF EMPLOYMENT SECURITY, Defendant.**

**No. 91 C 3261.**

United States District Court,
N.D. Illinois, E.D.

Oct. 30, 1991.

Margery E. Lieber, Corinna L. Metcalf, NLRB, Washington, D.C., Harvey Roth, NLRB, Chicago, Ill., for plaintiff.

Roland Burris, Atty. Gen., Richard S. Grenvich, Michael T. Prousis, Asst. Attys. Gen., Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiff, National Labor Relations Board (NLRB), brings this action against defendant, State of Illinois Department of Employment Security (IDES), for injunctive relief, pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, declaratory relief, pursuant to 28 U.S.C. §§ 2201 and 2202, and costs, claiming Section 900 D of the State of Illinois Insurance Act (Ill.Rev. Stat., ch. 48, ¶ 490 D) (Section 900 D) is preempted by plaintiff's exclusive jurisdiction to remedy unfair labor practices as prescribed in the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151, *et seq.* For the reasons set forth herein, plaintiff's relief is granted.

## FACTS

This controversy arose after the Southern Illinois Laborers' District Council filed a charge with Region 14 of the NLRB against Special Mine Services, Inc. (SMS) for alleged violations of the NLRA in connection with the discharge and layoff of six SMS employees. On September 28, 1990, plaintiff's Region 14 director approved an informal settlement agreement for the six discriminatees in the amount of $6,130.47 (NLRB Case No. 14–CA–20897). Pursuant to Section 900 D, SMS made 78 per cent of the backpay funds (the amount of unemployment benefits the discriminatees received while out of work) jointly payable to the discriminatees and the Illinois Director

of Employment Security.[1] The NLRB rejected the joint checks as an infringement on its exclusive right to redress unfair labor practices and demanded reissuance of the checks in the name of the discriminatees only. SMS refused, citing the possibility of criminal liability for noncompliance with Section 900 D [2] and on November 27, 1990, reissued the checks jointly.

## DISCUSSION

### A. *Injunctive Relief*

The NLRB claims that Section 900 D is preempted by the NLRA, 29 U.S.C. § 160(c), insofar as the Illinois statute interferes with the NLRB's remedial authority. As such, plaintiff requests a preliminary and permanent injunction pursuant to Fed.R.Civ.P. 65(a), a declaration of rights pursuant to 28 U.S.C. §§ 2201 and 2202, and costs. IDES counters that there is no preemption issue because it is not attempting to regulate conduct that is either protected or prohibited by the NLRA but is, instead, ensuring the fiscal integrity of public funds. Both parties agree that there are no facts in dispute and both invite this court, pursuant to Rule 65(a)(2), to reach the merits of this case. This court agrees that only legal questions are involved and therefore accepts the parties' invitation.

### B. *Merits*

■ The preemption doctrine, which is rooted in the Supremacy Clause of the United States Constitution, Article VI, Clause 2, dictates that federal law overrides or preempts any conflicting state regulation. The key to any preemption analysis is to determine if Congress has expressly intended to preempt a particular area of federal occupation or whether such intent is implicit in a pervasive federal regulatory scheme, in the need for national uniformity or because of potential conflict between concurrent state and federal regulations. *See Pennsylvania v. Nelson,* 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640 (1956); *Hines v. Davidowitz,* 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941). If congressional intent to preempt is found, the state regulation must yield.

In labor matters Congress has delegated to the NLRB the exclusive authority to enforce the provisions of the NLRA. *See* S.Rep. No. 573, 74th Cong., 1st Sess., p. 15 ("this bill is paramount over other laws that might touch upon similar subject matters"); H.Rep. No. 972, 74th Cong., 1st Sess., p. 21 ("This power is vested exclusively in the Board and is not to be affected by any other means of adjustment or prevention"). The rationale is that "Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes towards labor controversies...." *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 242–43, 79 S.Ct. 773, 778, 3 L.Ed.2d 775, 781–82 (1959) (*quoting Garner v. Teamsters, Chauffeurs & Helpers Local Union,* 346 U.S. 485, 490–91, 74 S.Ct. 161, 165, 98 L.Ed. 228, 239). In *Garmon,* the Court considered whether a California court had jurisdiction to award

---

1. Section 900 D provides:

 Whenever, by reason of a backpay award made by any governmental agency or pursuant to arbitration proceedings, or by reason of a payment of wages wrongfully withheld by an employing unit, an individual has received wages for weeks with respect to which he has received benefits, the amount of such benefits may be recouped or otherwise recovered as herein provided. *An employing unit making a backpay award to an individual for weeks with respect to which the individual has received benefits shall make the backpay award by check payable jointly to the individual and to the Director.*

Ill.Rev.Stat., ch. 48, ¶ 490 D (emphasis added).

2. The Illinois Insurance Act also provides in pertinent part:

 Any employing unit or person who willfully violates any provision of [the Insurance Act] ... or who fails, neglects, or refuses to perform any duty required by any provision of this Act ... shall be guilty of a Class B misdemeanor, and each such act, failure, neglect, or refusal shall constitute a separate and distinct offense.

Ill.Rev.Stat., ch. 48, ¶ 780, § 2800 B.

damages arising out of peaceful union activity. In rejecting jurisdiction, the Court explained that "[t]o the National Labor Relations Board and to Congress must be left those precise and closely limited demarcations that can be adequately fashioned only by legislation and administration." *Garmon*, 359 U.S. at 242, 79 S.Ct. at 778, 3 L.Ed.2d at 781.

■ In the instant case the NLRB asserts that Section 900 D "frustrates the purpose" and "impairs the efficiency" of the NLRB in its remedial authority under § 10(c) of the NLRA[3] and therefore is preempted (*quoting Nash v. Florida Indus. Comm'n*, 389 U.S. 235, 240, 88 S.Ct. 362, 366, 19 L.Ed.2d 438, 443 (1967)). More specifically, the NLRB contends that any remedy it attempts to effectuate would be at jeopardy if the remedy was subject to third party assignments, garnishments or, as here, recoupment by a state before the backpay is actually in the hands of the wronged employee. The NLRB further contends that if enforcement of Section 900 D is allowed, it will be subject to any number of similar state regulations, thereby upsetting the much needed national uniformity of labor law administration. Considered together, the NLRB argues, these adverse consequences would detract from what Congress intended when it created the exclusive centralized administration of the NLRB.

The NLRB also adds that its position is a well-established policy, as evident in several administrative decisions denying third party assignments, garnishments and unemployment recoupment, before the backpay award is in the hands of the employee (pl. memo in support, p. 9), *citing Monroe Feed Store*, 122 NLRB 1479, 1487, 1488

(1959); *Yama Woodcraft Inc.*, 221 NLRB 1244 (1975); *Amshu Associates, Inc.*, 234 NLRB 791, 792 n. 5 (1978); *Sioux Falls Stock Yards Co.*, 236 NLRB 543 n. 4 (1978)).[4]

■ After careful consideration of the NLRB's charges, this court agrees. If the NLRB is exclusively responsible for redressing unfair labor practices, which it is, this must necessarily include ensuring that the remedy prescribed is administered to its conclusion. By giving IDES, as joint payee, a direct ownership interest in certain backpay awards, Section 900 D threatens this very process. The NLRB is put smack in the middle of any dispute between IDES and the discriminatee regarding the amount of unemployment compensation which the discriminatee received. If and when any dispute arose, the NLRB would either have to accept on its face that the joint check accurately reflects the proper amount or it would have to determine the actual amount of unemployment benefits received for the period covered by the backpay award. This clearly would have a debilitating effect on the NLRB in terms of cost and efficiency. Simply put, IDES may not realize a gain in administrative efficiency by shifting a burden to the NLRB in a way that detracts from the NLRB's objective of remedying unfair labor practices.

■ IDES argues that Section 900 D does not come within the purview of the NLRA, thus making a preemption analysis improper. It is suggested that recouping unemployment benefits does not involve regulating conduct which is either protected or prohibited under Section 7 or Section 8 of the NLRA. This assertion by IDES

---

3. The NLRA provides, in pertinent part:

[If the NLRB] shall be of the opinion that any person named in the complaint has engaged in or is engaging in any unfair labor practice, then the Board shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action, including reinstatement of employees with or without backpay, as will effectuate the policy of this subchapter....

29 U.S.C. § 160(c).

4. Plaintiff also cites its Case Handling Manual, which provides:

Inasmuch as a backpay award is made in effectuation of a public policy and has no private character whatsoever until distributed, neither the agency nor the respondent can be held subject to assignments, liens, garnishments, or other processes before the funds have been distributed.

(pl. memo in support, p. 9 n. 8).

requires too narrow a reading of *Garmon*. *Garmon* acknowledged:

> At times it has not been clear whether the particular activity regulated by the States was governed by § 7 or § 8 or was, perhaps, outside both these sections. But courts are not primary tribunals to adjudicate such issues. It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board.

*Garmon*, 359 U.S. at 244–45, 79 S.Ct. at 779, 3 L.Ed.2d at 783. *Garmon* set the standard to be applied in labor preemption cases by stating that "[w]hen an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *Garmon*, 359 U.S. at 245, 79 S.Ct. at 780, 3 L.Ed.2d at 783.

In an attempt to buttress its argument that Section 900 D is outside the scope of the NLRA, IDES points to *New York Telephone Co. v. New York State Dept. of Labor*, 440 U.S. 519, 99 S.Ct. 1328, 59 L.Ed.2d 553 (1979), where the Court held that the NLRA does not prohibit the State of New York from paying unemployment benefits to strikers. Justice Stevens, in writing for a plurality, rejected the employer's argument that the state was interfering with the bargaining process by stating that "[t]he general purpose of the program is not to regulate the bargaining relationships between the two classes but instead to provide an efficient means of insuring employment security in the State." *New York Telephone Co.*, 440 U.S. at 533, 99 S.Ct. at 1337, 59 L.Ed.2d at 564.

IDES would apparently read *New York Telephone Co.* to hold that all legislation related to unemployment compensation is exempt from preemption because they are laws of general applicability. Just as IDES reads *Garmon* too narrowly, *New York Telephone Co.* is being interpreted too broadly. *New York Telephone Co.* merely acknowledges the legitimate interest of the state to award unemployment compensation to a general class of unemployed workers, without regard to any pending labor dispute between an employer and their respective bargaining unit. Similarly, Illinois may award unemployment benefits to strikers if it so chooses. The NLRB has not argued, and rightfully so, that Illinois may no longer effectuate the goal of serving its unemployed, or that its interest in recouping unemployment benefits is irrational. The NLRB merely desires that IDES' efforts to recoup these benefits be directed at the discriminatee after he or she receives the full amount of the prescribed backpay award.

Since IDES' overall objective of administering unemployment benefits is not being frustrated, this court cannot say that Section 900 D, in and of itself, is "so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." *Garmon*, 359 U.S. at 244, 79 S.Ct. at 779, 3 L.Ed.2d at 782. This is especially true when, as here, the local interest is met with the countervailing national public interest that is furthered when the NLRB exercises its remedial authority. *See Amalgamated Utility Workers v. Consolidated Edison Co. of New York*, 309 U.S. 261, 267–70, 60 S.Ct. 561, 564–66, 84 L.Ed. 738, 742–44 (1940); *NLRB v. Stackpole Carbon Co.*, 128 F.2d 188, 191–92 (3d Cir.1942).

As cited by the NLRB, the most instructive case is *NLRB v. Gullett Gin Co.*, 340 U.S. 361, 71 S.Ct. 337, 95 L.Ed. 337 (1951), where the Court recognized the NLRB's power to refuse to deduct unemployment compensation from backpay awards. The only difference between *Gullett Gin Co.* and the instant case is that in the former the employer sought to have the paid-out unemployment compensation deducted from the backpay award before the check was sent to the NLRB. Here it is the state seeking to effectuate a deduction of paid-out unemployment benefits by being included as a party to the award. Contrary to IDES' argument, this is merely a mechanical distinction that does not warrant a different result. Indeed, the *Gullett Gin*

*Co.* Court, in an 8–0 decision, based its holding on the broad discretion given the NLRB in its authority, "to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this Act...." *Gullett Gin Co.*, 340 U.S. at 362, 71 S.Ct. at 339, 95 L.Ed. at 341 (*quoting* 29 U.S.C. § 160(c)). "Because the relationship of remedy to policy is peculiarly a matter for administrative competence, courts must not enter the allowable area of the Board's discretion and must guard against the danger of sliding unconsciously from the narrow confines of law into the more spacious domain of policy." *Gullett Gin Co.*, 340 U.S. at 362, 71 S.Ct. at 339, 95 L.Ed. at 341. (*quoting Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 194, 61 S.Ct. 845, 852, 85 L.Ed. 1271, 1283 (1941).

As noted in *Gullett Gin Co.*, the NLRB's decision not to consider any collateral losses or benefits when it fashioned its remedy, was in line with past precedent. Congress impliedly approved of this precedent when it amended the NLRA in 1947 without making any changes in this area. *See Gullett Gin Co.*, 340 U.S. at 366, 71 S.Ct. at 340–41, 95 L.Ed. at 343 (*citing* H.Rep. No. 255, 80th Cong., 1st Sess.; S.Rep. No. 105, 80th Cong., 1st Sess.). Finally, the cases cited by IDES, where recoupment of unemployment benefits was allowed from the backpay award, are all distinguishable. None of the cases involved an unfair labor practice proceeding where the NLRB's exclusive jurisdiction was invoked. *See Dillon v. Coles*, 746 F.2d 998 (3d Cir.1984) (Title VII case); *Gelof v. Papineau*, 829 F.2d 452 (3d Cir.1987) (age discrimination); and *Certified Midwest, Inc. v. Local Union 738*, 686 F.Supp. 189 (N.D.Ill.1988) (arbitral award).

## CONCLUSION

For the foregoing reasons, the defendant is enjoined from seeking to enforce Section 900 D of the State of Illinois Unemployment Insurance Act (Ill.Rev.Stat., ch. 48, ¶ 490 D) as it pertains to Special Mine Services, Inc., with regard to the payment of backpay due to the settlement of NLRB Case, No. 14–CA–20897. Further, Section 900 D is hereby preempted to the extent that it involves regulating or restraining conduct, as in this case, which is governed exclusively by the NLRA. The NLRB is also awarded cost.